# 24-425(L);
# 24-454

### In the
### United States Court of Appeals for the Second Circuit

D. JOSEPH KURTZ, Individually and on Behalf of All Others Similarly
Situated, Gladys Honigman
*Plaintiffs - Appellees,*

v.

THEODORE H. FRANK,
*Objector – Appellant,*

v.

KIMBERLY-CLARK CORPORATION, COSTCO WHOLESALE CO.,
*Defendants – Appellees.*

On Appeal from the United States District Court
for the Eastern District of New York, Nos. 1:14-cv-1142, 2:15-cv-02910

## OPENING BRIEF AND SPECIAL APPENDIX
## OF APPELLANT THEODORE H. FRANK

Theodore H. Frank
Anna St. John
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
(917) 327-2392
anna.st.john@hlli.org

*Attorneys for Objector – Appellant
Theodore H. Frank*

**Corporate Disclosure Statement (FRAP 26.1)**

As the disclosure requirements of Federal Rule of Appellate Procedure 26.1 require, Theodore H. Frank declares that he is an individual and, as such, is not a subsidiary or affiliate of a publicly owned corporation and there is no publicly held corporation that owns ten percent or more of any stock issued by him.

# Table of Contents

**Corporate Disclosure Statement (FRAP 26.1)** ....................................i

**Table of Authorities**..........................................................................iv

**Jurisdictional Statement** ....................................................................1

**Statement of the Issues**......................................................................3

**Statement of the Case** ........................................................................5

      A.    Plaintiffs bring class actions, and the parties settle. ............5

      B.    Frank objects to the settlement and class counsel's fee request. ...................................................................8

      C.    Payment to the class totals less than $1 million.................10

      D.    After a fairness hearing, the court approves the settlement over Frank's objection and awards a reduced attorneys' fee of over $3 million.....................................................10

**Summary of Argument**.....................................................................13

**Argument** .........................................................................................17

I.    Because class-action settlements are predisposed to agency problems, courts must be wary of the *allocation* of a class-action settlement as between the class and class counsel. .....................17

      A.    Judicial scrutiny of the actual allocation of settlement benefit protects the absent class members...........................17

      B.    Claims-made settlements where funds are "made available" but never paid to the class obscure the true allocation of the class relief...........................................................22

II.   The settlement approval cannot stand because Rule 23(e) forbids preferential treatment to class counsel such as the payment of over $3 million to the attorneys compared to less than $1 million to the class here..........................................................27

      A.    This Circuit holds that district courts must reject settlements that pay outsized attorneys' fees compared to the actual class benefit........................................................27

B.   The district court misapplied Rule 23 and legally erred by approving the settlement that the parties structured to disproportionately favor the attorneys rather than the class. .............................................................................. 30

C.   The district court erred in considering the "red flag" of a fee reversion to the defendant a benefit to the class under Rule 23(e)(2)(C)(iii) ................................................................... 39

**Conclusion** ................................................................................ 41

**Certificate of Compliance  with Fed. R. App. 32(a)(7)** .................. 43

**Certificate of Service** ............................................................... 44

# Table of Authorities

<u>Cases</u>

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 216 (2d Cir. 1987) ........................................................... 19

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ................................................. 27, 34

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020) ............................................................. 8

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................16, 19, 20, 28, 34, 38, 40, 41

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ..3, 8, 19, 23, 25, 28, 31, 33, 34, 38-40

*In re Carrier iQ, Inc. Consumer Privacy Litig.*,
    No. 12-md-02330, 2016 WL 4474366
    (N.D. Cal. Aug. 25, 2016).............................................................. 24

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ........................................................... 18

*Central States Se. & Sw. Areas Health & Welfare Fund v.*
    *Merck-Medco Managed Care*,
    504 F.3d 229 (2d Cir. 2007) ............................................................. 3

*City of Detroit v. Grinnell*,
    495 F.2d 448 (2d Cir. 1974) ................................................. 4, 11, 32

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ................................................... 27, 28

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) ............................................................................. 2

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ............................................. 18, 19, 28

*Espinal v. Victor's Café 52nd St., Inc.*,
    2019 WL 5425475, 2019 U.S. Dist. LEXIS 18364
    (S.D.N.Y. Oct. 23, 2019) ................................................................ 21

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ...................................................... 40

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 15-cv-3747 (N.D. Cal.) .......................................................... 25

*Fager v. CenturyLink Communs., LLC*,
    854 F.3d 1167 (10th Cir. 2016) .................................................. 34

*Fresno Cty. Emps. Ret. Ass'n v. Isaacson*,
    925 F.3d 63 (2d Cir. 2019) .......................................................... 19

*Glasser v. Volkswagen of Am., Inc.*,
    645 F.3d 1084 (9th Cir. 2011) .................................................... 40

*Goldberger v. Integrated Res.*,
    209 F.3d 43 (2d Cir. 2000) ............................................ 18, 19, 21, 39

*Grant v. Bethlehem Steel Corp.*,
    823 F.2d 20 (2d Cir. 1987) .......................................................... 17

*Holt v. Foodstate, Inc.*,
    No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265
    (D.N.H. Jan. 16, 2020) ................................................................ 24

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) .................................................... 39

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
    2018 WL 5013764, 2018 U.S. Dist. LEXIS 177824
    (W.D. Wash. Oct. 16, 2018) ........................................................ 24

*Kukorinis v. Walmart, Inc.*,
    No. 19-cv-20592 (S.D. Fla.) ........................................................ 25

*Kumar v. Salov N. Am. Corp.*,
    No. 14-cv-02411 (N.D. Cal.) ........................................................ 24

*Kurtz v. Costco Wholesale Corp.*,
   818 F. App'x 57 (2d Cir. 2020) .......................................................... 7

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ....................................................... 7

*L-3 Commc'ns Corp. v. OSI Sys.*,
   607 F.3d 24 (2d Cir. 2010) ................................................................ 4

*Laffitte v. Robert Half Int'l*,
   376 P.3d 672 (Cal. 2016)................................................................. 39

*Lagarde v. Support.com, Inc.*,
   2013 WL 1994703, 2013 U.S. Dist. LEXIS 67875
   (N.D. Cal. May 13, 2013) ............................................................... 25

*In re Livingsocial Mktg. and Sales Practices Litig.*,
   298 F.R.D. 1 (D.D.C. 2013)............................................................. 25

*Marshall v. Deutsche Post DHL*,
   2015 WL 5560541, 2015 U.S. Dist. LEXIS 125869
   (E.D.N.Y. Sept. 21, 2015) .............................................................. 20

*Ma v. Harmless Harvest*,
   2018 U.S. Dist. LEXIS 123322, 2018 WL 1702740
   (E.D.N.Y. Mar. 31, 2018)................................................................ 21

*McCrary v. Elations Co.*,
   2016 WL 777865, 2016 U.S. Dist. LEXIS 24050
   (C.D. Cal. Feb. 25, 2016) ............................................................... 24

*McKinney-Drobnis v. Oreshack*,
   16 F.4th 594 (9th Cir. 2021) .......................................................... 32

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ......................3, 4, 11, 12, 29, 31, 32, 33

*In re Payment Card Interchange Fee & Merchant Discount
   Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016)............................................................. 3

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ..........3, 8, 14, 19, 20, 24-29, 34, 39, 40

*Piambino v. Bailey*,
    757 F.2d 1112 (11th Cir. 1985) ...................................................... 39

*Plummer v. Chemical Bank*,
    668 F.2d 654 (2d Cir. 1982) ..................................................... 18, 33

*Poertner v. The Gillette Co.*,
    No. 6:12-v-00803-GAP-DAB (S.D. Fla.) ........................................ 25

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ................................................... 28, 31

*Roes v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ........................................... 23, 27, 28

*Silverman v. Motorola, Inc.*,
    739 F.3d 956 (7th Cir. 2013) ......................................................... 40

*In re Sony VAIO Computer Notebook Trackpad Litig.*,
    No. 09-cv-2109 (S.D. Cal.) ............................................................. 25

*In re Stericycle Sec. Litig.*,
    35 F.4th 555 (7th Cir. 2022) ............................................................. 8

*Williams v. Reckitt-Benckiser LLC*,
    65 F.4th 1243 (11th Cir. 2023) ...................................................... 34

*In re World Trade Ctr. Disaster Site Litig.*,
    754 F.3d 114 (2d Cir. 2014) ........................................................... 30

Rules and Statutes

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1332(d).................................................................................. 1

Fed. R. App. Proc. 4(a)(1)(A) .................................................................. 2

Fed. R. App. P. 4(a)(7)(A)(ii).............................................................. 2

Fed. R. Civ. Proc. 23.................................... 17, 27, 30, 31, 39

Fed. R. Civ. Proc. 23(b)(2) ............................................................ 7

Fed. R. Civ. Proc. 23(b)(3) ............................................................ 6

Fed. R. Civ. Proc. 23(e) .................................... 9, 22, 32, 38

Fed. R. Civ. Proc. 23(e)(2)...................................................... 11, 38

Fed. R. Civ. Proc. 23(e)(2)(C)................................5, 15, 26, 27, 29, 30, 32

Fed. R. Civ. Proc. 23(e)(2)(C)(i) .............................................. 16

Fed. R. Civ. Proc. 23(e)(2)(C)(ii) .......................3, 9, 12, 13, 15, 27, 34, 35

Fed. R. Civ. Proc. 23(e)(2)(C)(iii) .......................3, 9, 10, 12, 16, 27, 39, 41

Fed. R. Civ. Proc. 23(e)(5)................................................................ 5

Fed. R. Civ. Proc. 23(h) .................................... 4, 13, 22, 35, 41

New York General Business Law § 349.................................. 37

New York General Business Law § 350.................................. 37

Other Authorities

Erichson, Howard M.,
*How to Exaggerate the Size of Your Class Action Settlement,*
Daily J. (Nov. 8, 2017) .................................................. 22

Frank, Ted,
*Settlement Insurance Shows Need for Court Skepticism in Class Actions,*
CEI Open Market blog (Aug. 31, 2016)........................... 26

Gold, Russell M.,
*"Clientless" Lawyers,*
92 Wash. L. Rev. 87 (2017)............................................ 21

*Merriam-Webster* ....................................................................... 34, 35

Notes of Advisory Committee
on 2003 Amendment to Rule 23 ........................................ 20, 32, 39

Notes of Advisory Committee
on 2018 Amendment to Rule 23 ................................................. 29

Silver, Charles,
*Due Process and the Lodestar Method*,
74 Tulane L. Rev. 1809 (2000) ...................................................... 39

Wolfman, Brian,
*Judges! Stop Deferring to Class Action Lawyers*,
2 U. Mich. J. L. Reform 80 (2013) ................................................ 21

## Jurisdictional Statement

The district court had subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The two underlying actions were brought as class actions on behalf of proposed classes that each exceeded 100 members. The amount in controversy exceeds $5,000,000, exclusive of interest and costs in each of the actions. The plaintiff classes include members whose citizenship is different from the defendants' Delaware and Washington citizenship. A-88; A-135.[1]

This court has appellate jurisdiction under 28 U.S.C. § 1291. Following a single settlement of the class actions, appellant class member Theodore H. Frank objected to approval of the proposed settlement and the plaintiffs' attorneys' fee request. A-429. The district court held a fairness hearing and subsequently certified the class and approved the settlement in an order dated June 12, 2023, and set a hearing to consider

---

[1] "A" stands for the joint appendix for this appeal. "SPA" stands for the special appendix in this appeal. "*Kurtz* Dkt." stands for docket numbers in the lead underlying district court case, No. 1:14-cv-01142 (E.D.N.Y.); "*Honigman* Dkt." stands for docket numbers in that district court case, No. 2:15-cv-02910 (E.D.N.Y.); "App. Dkt." stands for docket numbers in this case.

Because identical documents were filed on the separate dockets for the two consolidated cases below, only one copy of such documents is included in the appendices unless the separate documents have independent relevance to the appeal, *e.g.*, the judgments.

class counsel's attorneys' fee request. A-588. On September 19, 2023, the district court entered a minute entry stating that for the reasons stated on the record that day, the court would "revisit its decision finally approving the settlement." A-58; A-81. Following the September 2023 hearing, on January 17, 2024, the district court issued an amended memorandum and order approving the settlement and approving a Rule 23(h) award of $3.3 million in fees and expenses for class counsel. SPA-1. Frank appealed in *Kurtz* on February 15, 2024 and in *Honigman* on February 16, 2024. A-656; A-658. The district court entered judgment in both cases on March 15, 2024. SPA-39; SPA-40. Frank filed amended notices of appeal on March 20, 2024, to account for the entry of judgment. A-660; A-663. These notices are timely under Fed. R. App. P. 4(a)(1)(A) and Fed. R. App. P. 4(a)(7)(A)(ii). Frank, as a class member who objected to settlement approval below, has standing to appeal from a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

## Statement of the Issues

1.     Fed. R. Civ. Pro. 23(e)(2)(C)(ii) and (iii) require courts deciding whether to approve a settlement to consider whether the settlement relief is adequate with consideration of "the effectiveness of any proposed method of distributing relief to the class," and in relation to "the terms of any proposed award of attorney's fees." If the negotiated fees are outsized in relation to the value of the actual class benefit, the settlement should be rejected as unfairly affording preferential treatment to class counsel. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014); *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021). Did the district court err as a matter of law when it approved a settlement that paid less than $1 million to the class while class counsel recovered over $3.3 million and the settlement contained "red flag" provisions designed to benefit attorneys over the class?

**Standard of Review**: Settlement approval is reviewed for abuse of discretion. *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 246 (2d Cir. 2007); *Moses v. New York Times Co.*, 79 F.4th 235, 242-43 (2d Cir. 2023). A court abuses its discretion if its decision "rests on a legal error or clearly erroneous factual finding, or falls outside the range of permissible decisions." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016). "This Court reviews de novo questions of statutory interpretation, including a district court's interpretation of the

Federal Rules of Civil Procedure." *L-3 Commc'ns Corp. v. OSI Sys.*, 607 F.3d 24, 27 (2d Cir. 2010).

## Statement of the Case

This is an appeal from an order of Judge Pamela K. Chen approving class-action settlements over the objection of appellant Theodore H. Frank. SPA-1. The decision is not reported. *See Kurtz v. Kimberly-Clark Corp.*, Nos. 14-cv-1142, 15-cv-2910, 2024 WL 184375, 2024 U.S. Dist. LEXIS 8711 (E.D.N.Y. Jan. 17, 2024).

This consolidated appeal arises from two underlying class actions brought by plaintiffs seeking to recover for the harm allegedly caused by Kimberly-Clark Corporation's flushable wipes. The parties settled, but structured the settlement so that attorneys would receive several times as much as the class, but any court reduction of the fee request would redound to the defendant rather than the class. As Rule 23(e)(5) permits, class member Frank objected to these terms of the settlement as unfair under Rule 23(e)(2)(C). The district court overruled his objection, approved the settlements and $3.3 million in fee requests, and entered final judgment. Frank appeals.

## A.  Plaintiffs bring class actions, and the parties settle.

Plaintiff-appellee D. Joseph Kurtz filed a class action against Kimberly-Clark and Costco Corporation alleging that the companies falsely labeled and advertised their wipes products as "flushable" without harming plumbing and sewer systems, and seeking damages and injunctive relief. A-85; A-128-129. (The settlement at issue does not include Costco Corporation, and, accordingly, Costco asked to be removed

as an appellee and is not otherwise a party to this appeal. *See* App. Dkt. 40. This brief omits discussion of Costco unless directly relevant.) Kurtz filed his complaint on behalf of national, New York, and New Jersey purchaser classes. A-120. Meanwhile, plaintiff-appellee Gladys Honigman filed a separate class action against Kimberly-Clark similarly alleging that Kimberly-Clark had falsely labeled and advertised its wipes products as "flushable" and seeking damages and injunctive relief and proposing national classes for Kimberly-Clark and Cottonelle branded wipes. A-132; A-163; A-170. Both plaintiffs-appellees alleged that through the ordinary or directed use of these flushable wipes, consumers nationwide experienced plumbing issues, including clogged toilets, clogged pipes, flooding of home basements, and other plumbing problems.

In April 2022, Kurtz and Honigman, represented by the same attorneys, entered into a single shared settlement agreement with Kimberly-Clark. A-346. (Although no one formally consolidated the two cases before the district court, everyone has effectively treated the cases as a single consolidated case since the settlement.)

The settlement defined the settlement class as "all individuals over the age of 18 who purchased the Products not for the purpose of resale" from February 21, 2008, to May 19, 2022, with certain limited exclusions. A-355 ¶ 1.32.[2] "Products" meant Kimberly-Clark's flushable wipes sold

---

[2] The district court had certified a Rule 23(b)(3) damages class limited to New York class members and denied certification of a

in the United States under the Cottonelle, Scott, Huggies Pull-Ups, Poise, or Kotex brands. A-354 ¶ 1.26. The class consists of millions of individual consumers, though the parties disclaimed knowledge of the precise class size. A-544; A-546.

Under the settlement, Kimberly-Clark would pay up to $20 million for class members to claim as compensation and separately pay class counsel's fee and expense award in an amount up to $4.1 million, subject to approval by the district court. A-358-359 ¶¶ 2.4, 2.5; A-366 ¶ 6.1. If the value of claims exceeds the fund of $20 million, the compensation to each class member would be pro-rated. A-359 ¶ 2.5. Any amounts under $20 million not claimed remain with Kimberly-Clark. A-358-359 ¶¶ 2.4, 2.5. Class members would release Kimberly-Clark from all liability other than for personal injury—including for property damage and plumbing expenses. A-354 ¶ 1.24; A-367-368 ¶ 7.1.

Class counsel sought the $4.1 million the settlement permitted: $3,961,668.77 in attorneys' fees and $138,331.23 in expenses. Class counsel asked the court to use the lodestar method to award fees. *Kurtz*

---

nationwide class. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 555 (E.D.N.Y. 2017). This Court affirmed the (b)(3) certification ruling while reversing certification of a 23(b)(2) injunctive relief class. *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020). The settlement expanded the (b)(3) class to a nationwide settlement class.

Dkt. 443 at 2, 19-21. In their motion requesting fees, class counsel claimed a lodestar of $4,269,331.50. *Id.* at 20.

The settlement established two tiers of recovery. Class members who submitted proofs of purchase (saved over the fourteen-year class period) can recover up to $50.60, while those who did not retain proofs of purchase for their flushable wipes purchases can recover up to $7.00. A-354 ¶ 1.27; A-358 ¶ 2.4. The settlement restricted class members to make a claim under only one of these two categories, and only one member of a household or shared physical address may file a claim, no matter how many individual consumers reside there. A-358 ¶ 2.4.

The district court authorized class notice of the settlement. A-421.

## B. Frank objects to the settlement and class counsel's fee request.

Appellant Theodore H. Frank is a class member, as he bought Kimberly-Clark's flushable wipes during the class period. A-458. Frank is an activist attorney who founded the Center for Class Action Fairness ("CCAF"), part of the nonprofit Hamilton Lincoln Law Institute, whose attorneys represented Frank. Frank and CCAF have won several cases establishing precedents regarding unfair class-action settlements and fee requests. *E.g.*, *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Berni v. Barilla S.P.A.*, 964 F.3d 141 (2d Cir. 2020); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014); *see also In re Stericycle Sec. Litig.*, 35 F.4th 555, 572 & n.11 (7th Cir. 2022) (praising Frank's "track record" and

listing cases); A-462-481 (documenting, as required by preliminary approval order (A-426; A-392), dozens of successful objections).

Frank filed a timely objection challenging the fairness of the proposed settlement and class counsel's fee request. A-429.

Frank objected that the settlement disproportionately benefited the attorneys in violation of Rule 23. A-429-454. He argued that Rule 23(e)(2)(C)(ii) and (iii) require courts to examine the effectiveness of "distributing relief to the class," including any claims process, and the terms of the proposed award of attorneys' fees. This standard accordingly required the court to analyze the fairness of the ratio of fees to actual class recovery before approving the settlement under Rule 23(e). Here, Frank argued, the settlement was not fair under that measure because class counsel had negotiated a disproportionate share of the settlement for themselves. They had requested over $4 million in fees and expenses, while the class would recover only a fraction of that amount. Besides the fact universally known among the class-action bar that claims-made settlements in consumer class actions typically have meager claims rates, Frank argued that the parties had designed a claims process that was intended to—and did—throttle claims and reduce class recovery, specifically noting several website error messages and incorrect website instructions when he attempted to make a claim. A-458-460. In other words, relief had not been effectively distributed to the class, a factor critical to the court's analysis under Rule 23(e)(2)(C)(ii). Meanwhile, class

counsel had negotiated a segregated fund that insulated their fee award from scrutiny and unfairly prevented the class from recovering any reduction in that fee. Frank argued that an analysis under Rule 23(e)(2)(C)(iii) of these features of settlement regarding the attorneys' fee award, combined with the ineffective distribution of relief, precluded settlement approval. Frank argued in the alternative for a reduction of the fees to an amount proportional to actual class relief.

## C.    Payment to the class totals less than $1 million.

The settlement administrator confirmed Frank's prediction that the $20 million fund would not come close to being exhausted. It reported that, out of the multi-million-member class, class members had filed 147,645 valid claims by the August deadline: 144,977 without proof of purchase, and 2,688 with proof of purchase. A-625:17-23. The average recovery for claiming class members is $6.73, with $30.90 for those with proof of purchase, and $6.28 otherwise. A-626:12-14. Millions of other class members would receive nothing.

The total amount of the claims to be paid to the class would be $993,958.70. A-625:25-626:1.

## D.    After a fairness hearing, the court approves the settlement over Frank's objection and awards a reduced attorneys' fee of over $3 million.

The district court held a fairness hearing at which Frank appeared through counsel on September 7, 2022. A-503. After supplemental

briefing, the court issued an order in June 2023 certifying the settlement class and approving the settlement agreement. A-588. The court set a hearing for September 19, 2023, at which it would decide and award attorneys' fees. A-617.

Before that hearing, this Court issued *Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023). *Moses* held that "[c]ourts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account … the proposed attorneys' fees and incentive awards." 79 F.4th at 243. The *Moses* district court had erred by failing to consider the attorneys' fee award as part of its substantive fairness analysis—just as the district court here had approved the settlement without considering attorneys' fees. *Id.*

At the September 19 hearing, the district court, following *Moses*, re-opened its decision approving the settlement. A-58; A-620:20-624:18.

The district court ultimately approved the settlement and awarded class counsel $3,307,666.25. SPA-21. Kurtz and Honigman received incentive awards of $10,000 and $5,000, respectively. *Id.* The district court found "that all four factors enumerated in Rule 23(e)(2) and the *Grinnell* factors[3] weigh[ed] in favor of final approval of the Settlement

---

[3] *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Agreement, subject to a reduction of the requested attorneys' fees." SPA-20.

As for Rule 23(e)(2)(C)(ii), the district court determined that "the key factor is whether the compensation *available* to the settlement class is fair and adequate, and not the extent to which the class takes advantage of the offer presented to them." A-604 (emphasis added); SPA-14 (declining to revisit pre-*Moses* Rule 23(e)(2)(C)(ii) analysis). The court found it unnecessary to make "an evaluation of the class's actual recovery." A-604. The court also referenced the minutiae of the claims process in analyzing the proposed method of distribution, such as the existence of a settlement website and notice plan, but failed to examine the actual effectiveness of distributing the $20 million fund to the class, or that less than 5% of that fund was distributed. A-615-616.

With Rule 23(e)(2)(C)(iii), the court held that because the attorneys' fee award was paid from a fund separate from the settlement benefits made available to the class, the fee award "will not affect the Class's recovery," and thus "adequately protect[ed] the Class's interests." SPA-15.

Further with respect to fees, the court observed that "about 95% of the purported $20 million benefit is 'purely hypothetical,'" and should not be considered a class benefit for assessing a fee percentage. SPA-24. The court did not reconcile its competing holdings that a "purely hypothetical" amount should not count as a benefit under the fee analysis, but should

under the Rule 23(e)(2)(C)(ii) fairness analysis. A-604; SPA-14. The court recognized that the requested attorneys' fees represented over 77% of the settlement's total value, which was "unreasonable under the circumstances." SPA-25. Despite acknowledging the unreasonableness of such a disproportionate attorneys' fee, the district court awarded fees that equaled over 73% of the settlement value using its same method of calculation.[4] The court utilized the lodestar method to award fees. SPA-22. Criticizing "inflated hourly rates," and vague time entries, the Court "impose[d] an across-the-board reduction of 20%" to the requested fees, awarding $3,169,335.02. SPA-31-34. The total Rule 23(h) award was $3.3 million. SPA-38.

Frank appealed in both cases. A-656; A-658. The district court subsequently entered judgment, SPA-39, SPA-41, and Frank filed timely amended notices of appeal to encompass the judgment, A-660, A-663.

This Court granted Frank's unopposed motion to consolidate the two appeals. App. Dkt. 43.1.

## Summary of Argument

In this case, the attorneys recovered over $3 million, while the class recovered less than $1 million. This result violates not only intuitive notions of justice but also the fairness requirements of Rule 23(e). The

---

[4] The district court's calculation included Rule 23(h) costs to be awarded to the attorneys in the denominator, but not the numerator.

ratio of attorney benefit to class benefit exceeds the amount the Seventh Circuit called impermissibly "selfish." *Pearson*, 772 F.3d at 787; *id.* at 780 ($2.1M for attorneys, $0.86M for the class).

The problem arises because of the inherent agency problems in class-action settlements. A defendant wishes only to get out of a case as cheaply as possible, and is indifferent as to the allocation of the cost of settlement between class counsel and the class. Both class counsel and the defendant have the incentive to create the *illusion* of relief at the expense of the class to obtain settlement approval, maximize fees, and minimize the cost to the defendant. Claims-made settlements with imaginary "caps" on defendant liability can create that illusion if a district court fails to scrutinize what is happening. *See* Section I.

The parties here structured the settlement to achieve just this result. Kimberly-Clark agreed to make "available" up to $20 million to compensate the class and to pay class counsel up to $4.1 million in fees and expenses from a separate fund. But that $20 million figure was illusory—or, as the district court acknowledged, "purely hypothetical." SPA-26. The claims process was effectively throttled, making it onerous for class members to claim $7, with a tier capped at $50.60 for those rare consumers who saved grocery receipts for years. Unsurprising to no one, the number of claims in the class of millions was dismal, with Kimberly-Clark paying less than 5% of the illusory $20 million made "available" and the remaining $19 million never having a chance of leaving its

pockets. The district court could not have "fixed" the disproportionality by reducing attorneys' fees and reallocating those funds to the class because the segregated fee structure prevented such a result where a pure common fund would not. Meanwhile, the settlement terms expanded the class from a smaller certified class to a nationwide class granting Kimberly-Clark a broad release of claims over a fourteen-year period.

The district court erred because it looked to the amount made "available" in applying Federal Rule of Civil Procedure 23(e)(2)(C). SPA-14; A-604. But the plain language of the rule requires district courts to assess settlement fairness by examining the "the *effectiveness* of any proposed method of distributing relief to the class, including the method of processing class-member claims" and the terms of a proposed award of attorneys' fees, including the timing of payment. "Effectiveness" under Rule 23(e)(2)(C)(ii) is an objective standard, easily measured with certainty: the settlement will distribute under $1 million of relief to the class. A more effective method would have distributed more; a less effective method would have distributed less. It was legal error for the district court to sign off on the settlement simply because a fictional $20 million was hypothetically available, when the class will receive the same amount that they would have received if $40 million or only $1 million was "made available."

The district court correctly noted that an award that equaled over 77% of the total settlement benefit was "unreasonable," but then dropped that entire line of analysis when evaluating settlement fairness. And even after that "unreasonable" finding, the court ultimately awarded a fee that, even after a 20% reduction for certain billing practices, was triple that of the class recovery, ultimately disregarding the upside-down ratio between class and attorney benefit. *See* Section II.A and II.B.

Meanwhile, the terms of the award of attorneys' fees precluded a district court from correcting that upside-down ratio of fees to relief because the settlement provided for fees to be paid from a segregated fund. That segregation unquestionably makes the class worse off, and is called a "red flag" by other appellate courts. The injury to the class from the segregated fund isn't even hypothetical: the court's $0.8 million fee reduction will go to Kimberly-Clark instead of the class. But "there is no apparent reason the class should not benefit from the excess allotted for fees." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011). And the district court erred again in considering that red flag costing the class money to be a benefit protecting the class under Rule 23(e)(2)(C)(iii). *See* Section II.C.

To be clear, Frank's appeal does not challenge the total value of the settlement under Rule 23(e)(2)(C)(i). If the parties negotiating at arm's length believe the appropriate compromise of the value of litigation is about $5 million, so be it. Frank does not ask Kimberly-Clark to

pay $20 million or even $6 million instead. But what class counsel may not do is structure a settlement such that they extract in fees most of the settlement value, compromising the class's claims while paying themselves. This happened here: the attorneys will get over three times as much as the $993,958.70 scheduled to be paid to the class. Settlement approval must be reversed.

## Argument

**I. Because class-action settlements are predisposed to agency problems, courts must be wary of the *allocation* of a class-action settlement as between the class and class counsel.**

**A. Judicial scrutiny of the actual allocation of settlement benefit protects the absent class members.**

Unlike settlements in other civil litigation in which the parties bargain away only their own rights, class-action settlements require court approval and impose on the district court exercising this function "a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987); Fed. R. Civ. P. 23. The requirement that courts must approve class action settlements and, in doing so, consider how the settlement allocates the benefits between the class and class counsel arises from precedent, the text of Rule 23, and the practical need for courts to police abuses in class-action settlements because of inherent agency problems. Courts must act "with a jealous

regard" for the rights and interests of the absent class members, *Goldberger v. Integrated Res.*, 209 F.3d 43, 53 (2d Cir. 2000) (cleaned up), because the principals—*i.e.*, the class members releasing their claims— are absent and have no control or even input with respect to the agents— *i.e.*, class counsel. Courts thus must act as protectors against "the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *In re Dry Max Pampers*, 724 F.3d 713, 715 (6th Cir. 2013); *see also Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982) (district court is "bound to withhold [settlement] approval until he ha[s] closely and carefully scrutinized the joint settlement proposal").

Judicial oversight is necessary because "the adversarial process— or … 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717. Thus, the conflict between the class and its counsel becomes most pronounced at the settlement stage of the litigation, when class counsel negotiates with the defendant and then petitions for a fee award. "[R]egardless how a total settlement package is formally structured," "every additional dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001). That's because "in negotiating a settlement, a defendant is interested only in disposing of the total claim asserted

against it"; "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Fresno Cty. Emps. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 69-70 (2d Cir. 2019) (cleaned up); *see also Briseño*, 998 F.3d at 1025 ("a defendant, no matter if a class has been certified, has 'no reason to care about the allocation of its cost of settlement between class counsel and class members'" (quoting *Pearson*, 772 F.3d at 783)). As a "rational maximizer," the defendant cares only "how much the settlement is likely to cost it." *Briseño*, 998 F.3d at 1025.

"The concern is not necessarily in isolating instances of major abuse, but rather is for those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987) (internal quotation omitted). The necessary review for district courts can be "difficult because the adversarial process is typically diluted—indeed, suspended—during fee proceedings." *Goldberger*, 209 F.3d at 52. Because of the defendant's indifference as to the allocation of settlement funds, courts must look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (internal quotation omitted).

As here, the parties might structure the settlement in segregated tranches, by which the parties provide for class relief and then also establish an "artificially separate fee." *Bluetooth*, 654 F.3d at 943. In this

type of settlement, any excess fees revert to the defendant, without affecting the class's direct financial stake in the request, enabling class counsel to tell the court that their fees will in no way reduce the recovery to the class members. But that is only true because of the decision to structure the settlement to withhold money that the defendant was willing to pay from the class. In reality, a separated fee fund is merely a "gimmick for defeating objectors" and insulating counsel's fee request from scrutiny. *Pearson*, 772 F.3d at 786. Because the entire settlement amount comes from the same source, the constructive common fund arrangement "should not enable parties to circumvent" restrictions on excessive fees. *Bluetooth*, 654 F.3d at 943.

Given this background, courts operating on their own (and at times with the aid of public-minded objectors) must engage in the "singularly important" function of measuring and calibrating fee awards, including in relation to the amount actually distributed to the class. Notes of Advisory Committee on 2003 Amendments to Rule 23. They must overcome the "natural temptation to approve a settlement, bless a fee award, sign a proposed order submitted by plaintiffs' counsel, and be done with the matter." *Marshall v. Deutsche Post DHL*, 2015 WL 5560541, 2015 U.S. Dist. LEXIS 125869, *2 (E.D.N.Y. Sept. 21, 2015). The problem, however, is that federal courts are endlessly busy. They are unaccustomed to having the adversarial process suspended and having to engage in inquisitorial judging, and have been "conditioned in non-

class contexts to view negotiated resolutions of disputes as preferable to litigated ones." *See* Russell M. Gold, *"Clientless" Lawyers*, 92 Wash. L. Rev. 87, 116 (2017). As a result, they often defer to class counsel rather than exercise a zealous degree of oversight. Brian Wolfman, *Judges! Stop Deferring to Class Action Lawyers*, 2 U. Mich. J. L. Reform 80, 82 (2013). This happens even though the proponents bear the burden to demonstrate the settlement is fair, reasonable, and adequate under Rule 23. *Ma v. Harmless Harvest*, 2018 U.S. Dist. LEXIS 123322, 2018 WL 1702740, *4 (E.D.N.Y. Mar. 31, 2018).

Still, one would think that even the most deferential courts would raise an eyebrow if class counsel approached them with an undisguised $4,316,624.95 common fund (fees + costs + actual benefit + incentive awards) and proposed to appropriate $3,307,666.25 in fees and expenses (77%) for themselves. This Court rejected the Ninth Circuit's 25% "benchmark" as something that, applied mechanically, would overcompensate attorneys. *Goldberger*, 209 F.3d at 51-52. The lopsided result here is several times the 25% that *Goldberger* rejected. Even "a one-third fee," while "not unheard of," is simply not the "norm in the Second Circuit." *Espinal v. Victor's Café 52nd St., Inc.*, 2019 WL 5425475, 2019 U.S. Dist. LEXIS 18364, at *6 (S.D.N.Y. Oct. 23, 2019).

With no path to an exorbitant fee as a direct share of the common fund, settling parties often seek to obscure the relative allocations between lawyers and class members by artificially inflating the

settlement's apparent value. The illusion of a large settlement benefits both class counsel and a defendant: "The more valuable the settlement appears to the judge, the more likely the judge will approve it. And the bigger the settlement, the bigger the fee for class counsel." Howard M. Erichson, *How to Exaggerate the Size of Your Class Action Settlement*, Daily J. (Nov. 8, 2017). Without judicial oversight to weed out such practices, class members are left with disproportionate settlements in which class counsel recovers far more than their proportional share and far more than what is fair under Rule 23(e) or reasonable under Rule 23(h).

## B. Claims-made settlements where funds are "made available" but never paid to the class obscure the true allocation of the class relief.

"Claims-made" settlements such as this one—where class members must submit a claim form to obtain compensation—are notorious for a lop-sided result favoring attorneys over the class. Rather than make direct payment to class members, a defendant agrees to make a specified amount of money available to the class, in theory at least, but the defendant pays out only on the claims that class members file and keeps the remainder for itself. But parties often cite the amount "made available" when presenting the settlement to the district court for approval to hide the true allocation of settlement benefit as among the class and the parties. And that's what happened here: class counsel

boasted about the amount purportedly made available and how hard they worked to obtain that result, and sought to justify an outsized fee, even though class members received a small fraction of that amount.

Because any amount not paid from the fund "made available" remains with the defendant, claims-made settlements "create[] an incentive for defendants to ensure as low a claims rate as possible so as to maximize the funds that will revert." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058-59 (9th Cir. 2019) (discussing perverse incentives in claims-made settlements). This incentive structure "might lead defendants to negotiate for a subpar notice process, a more tedious claims process, or restrictive claim eligibility conditions." *Id.* at 1059. It also "raise[s] the specter of their collusion, by (1) reducing the actual amount defendants are on the hook for, especially if the individual claims are relatively low-value, or the cost of claiming benefits relatively high; and (2) giving counsel an inflated common-fund value against which to base a fee motion." *Id.*

In this settlement, where class members did not receive direct notice and had to submit proof of purchase for consumable wipes products purchased over a 14-year period or else were capped at a $7 recovery, it is unsurprising that the class recovered less than $1 million of the $20 million purportedly made available. "[T]he redemption rate is notoriously low, especially when [a settlement] involves small-ticket items" and "provides for no direct notice to class members." *Briseño*, 998 F.3d at 1026

& n.3; *see also, e.g.*, *In re Carrier iQ, Inc. Consumer Privacy Litig.*, No. 12-md-02330, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (prominent settlement administrator found a median claims rate of 0.023% in settlements with publication-only notice). For years, courts have remarked upon how "especially in consumer class actions," such as this one, "the percentage of class members who file claims is often quite low." *Pearson*, 772 F.3d at 782 (discussing perverse incentives created by a claims-made settlement).

*Ex ante*, practical sense and empirical data from other cases foretold that claims without proof of purchase would be the far more common type of claim, particularly because the case involved a consumer product—flushable wipes—for which consumers rarely save their receipts for years. *See, e.g.*, *McCrary v. Elations Co.*, 2016 WL 777865, 2016 U.S. Dist. LEXIS 24050, at *15 (C.D. Cal. Feb. 25, 2016) (only 2 of 3,405 claimants submitted proof of purchase); Supp. Decl. of Jeanne C. Finegan, APR, *Kumar v. Salov N. Am. Corp.*, No. 14-cv-02411, Dkt. 164 ¶4 (N.D. Cal. May 26, 2017) (only 33 of more than 53,000 valid claims were submitted with proof of purchase); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2018 WL 5013764, 2018 U.S. Dist. LEXIS 177824 at *31 (W.D. Wash. Oct. 16, 2018) (365 of 300,000 class members claimed two free James Bond movies when notice required proof of purchase); *Holt v. Foodstate, Inc.*, No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) (99.5% of claimants submitted claims without

proof of purchase); *Kukorinis v. Walmart, Inc.*, No. 19-cv-20592, Dkt. 97 at 16 n.9 (S.D. Fla. Sept. 20, 2021) (0.0012% of claims were made with proof of purchase).

Even without proof-of-purchase hurdles, the claims rates in low-value consumer class settlements such as this one rarely crack the single digit percentages of the class. A settlement administration company conducted a wide-ranging survey that concluded that "settlements with little or no direct mail notice will almost always have a claims rate of less than one percent (1%)." Declaration of Deborah McComb re Settlement Claims ¶ 5, *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Dkt. 156 (S.D. Fla.). Data points from other cases demonstrate this point. *See, e.g., Briseño*, 998 F.3d at 1020 (claims rate of "barely more than one-half of one percent"); *Pearson*, 772 F.3d at 782 (claims rate of one-quarter of one percent); Second Expert Decl. of Prof. William B. Rubenstein, *In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-3747, Dkt. 517-2 ¶ 5 (N.D. Cal. Dec. 14, 2020) (average claims rate for classes above 2.7 million class members is less than 1.5%); *In re Livingsocial Mktg. and Sales Practices Litig.*, 298 F.R.D. 1, 19 (D.D.C. 2013) (0.25% claims rate even with direct email notice); *Lagarde v. Support.com, Inc.*, 2013 WL 1994703, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) (0.18% of class claiming $10); *In re Sony VAIO Computer Notebook Trackpad Litig.*, No. 09-cv-2109, Dkt. 378 (S.D. Cal. Aug. 7, 2017) (0.44% of class claiming either $5 or $25 without proof of purchase).

More generally, courts recognize the obvious: "experienced class action lawyers … must have known that the notice and claim forms, and the very modest monetary award that the average claimant would receive, were bound to discourage filings." *Pearson*, 772 F.3d at 783. Settling parties can now even fine-tune claims procedures to adjust claims rates with near-actuarial certainty; in fact, a defendant can purchase "settlement insurance" precisely because claims rates are so predictable. Ted Frank, *Settlement Insurance Shows Need for Court Skepticism in Class Actions*, CEI Open Market blog (Aug. 31, 2016).

The way to ameliorate this problem is to motivate counsel to seek out absent class members by tying fees to the amounts the class *actually* receives. Otherwise, class counsel have no incentive to ensure that their putative clients will actually make claims and receive cash. In settlements where class counsel have agreed to settlement provisions that do not ensure the complete recovery benefits the class, class counsel often recover an excessive share of the settlement funds for themselves. That's exactly what we see here. The district court misapplied Rule 23(e)(2)(C) and erred in approving the settlement.

II.  **The settlement approval cannot stand because Rule 23(e) forbids preferential treatment to class counsel such as the payment of over $3 million to the attorneys compared to less than $1 million to the class here.**

A.  **This Circuit holds that district courts must reject settlements that pay outsized attorneys' fees compared to the actual class benefit.**

The settlement was unfair as a matter of law because class counsel's fee award consumes three-quarters of the total benefit. Rule 23 guards against this outcome. Rule 23(e)(2)(C) expressly requires courts to consider defects of allocation between the class and class counsel as part of their fairness review. In particular, courts must consider, among other things, "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" and whether "the relief provided for the class is adequate, taking into account … the terms of any proposed award of attorney's fees." Rule 23(e)(2)(C)(ii), (iii). The court should not have approved a settlement that allocates to class counsel well above a reasonable percentage of the recovery—as multiple other circuits have consistently held. *See, e.g.*, *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (38.9% fee would be "clearly excessive"); *Roes*, 944 F.3d at 1051 (fee award of 45% of gross cash fund is "disproportionate"); *Allen v. Bedolla*, 787 F.3d 1218, 1224 n.4 (9th Cir. 2015) (fee award that exceeds class recovery by a factor of three is disproportionate); *Pearson*, 772 F.3d at 781 (69% fee is "outlandish");

*Redman v. RadioShack Corp.*, 768 F.3d 622, 630-32 (7th Cir. 2014) (55-67% allocation is unfair); *see also Briseno*, 998 F.3d at 1026 (reversing settlement approval where attorneys received $7 million and class received less than $1 million).

Unlike an all-inclusive pure common fund, the class benefits here are formally segregated from the attorneys' fees in a structure known as a "constructive common fund." *Dennis*, 697 F.3d at 862-63 (evaluating similar settlement structure). The parties may not wave away allocational issues simply by structuring the settlement as a constructive common fund with segregated fees, rather than a traditional common fund, or by asking the court to award fees using the lodestar method. *See, e.g.*, *Bluetooth*, 654 F.3d at 943; *Pampers*, 724 F.3d at 717.

Whatever the fund structure, "[t]he ratio that is relevant" to assessing fairness "is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630. It makes no difference whether the court calculated the fee through a percentage-of-fund or lodestar method. The disproportionality exists as an objective fact: Here, the class stands to recover just under $994,000 while the attorneys recover over $3.3 million in fees and expenses. Using the same calculation as *Redman*, class counsel's allocation was 76% of the constructive common fund. That ratio is higher than the figures rejected as inappropriate in *Dennis*, *Roes*, *Pearson*, and *Redman*.

Evaluating the fee award in comparison to the money that class members actually *receive* puts the incentives in exactly the right place: class counsel should work to get the settlement relief into their clients' hands, not merely make hypothetical amounts conceivably available. This is especially so when the terms of a settlement include the terms that determine how likely class members will be willing and able to make claims. "When the parties to a class action expect that the reasonableness of the attorneys' fees allowed to class counsel will be judged against the potential rather than actual or at least reasonably foreseeable benefits to the class, class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims." *Pearson*, 772 F.3d at 783.

Rule 23(e)(2)(C) expressly identifies factors that district courts must consider that, if applied with appropriate judicial scrutiny, address this very problem. These provisions build on existing precedents in which courts have interpreted Rule 23 to look at economic reality in assessing settlement fairness and attorneys' fee awards.

In *Moses*, this Court applied Rule 23(e)(2)(C) and emphasized that "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." 79 F.4th at 244 (quoting Notes of Advisory Committee on 2018 Amendment). Even before the amended Rule 23(e)(2)(C) and the precedent of *Moses*, this Circuit has long held that courts have a duty to ensure that overcompensation of attorneys

does not result in under-compensation of class members. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 n.9 (2d Cir. 2014).

Here, the district court erred because, despite recognizing that the fee award should not be based on the illusory settlement value and that class counsel should not receive the bulk of the settlement benefit, it still approved the settlement with a grossly disproportionate allocation of benefit to class counsel.

**B.    The district court misapplied Rule 23 and legally erred by approving the settlement that the parties structured to disproportionately favor the attorneys rather than the class.**

The district court wrongly concluded that the Rule 23(e)(2)(C) factors were not designed to "mandate an evaluation of the class's actual recovery" and suggested instead that they focused on a "broad prediction of the fairness of the [settlement] offer considering what the class could have obtained at trial." A-604. The court reasoned that Rule 23 calls for an "evaluation of a 'proposal,' not an outcome" and thus the analysis should focus on what the settlement is expected to provide class members. *Id*. But the court ignored the record evidence that Frank presented showing that the claims-made settlement, in a small-dollar consumer class action with no direct notice, was "expected" to provide the class with exactly the anemic recovery they received. The district court further erred by asserting that a segregated fee structure could

adequately protect the class's interests—despite clear precedent detailing the well-documented abuse of this structure to obscure the disproportionate allocation of settlement benefit and shield the attorneys' fee from a reduction that could be reallocated to the class. *See* Sections I.A and II.C; SPA-15. Perhaps worse, the court found the settlement fair under these erroneous standards even after recognizing that "about 95% of the purported $20 million benefit is 'purely hypothetical'" and that the requested fee totaled an unreasonable 77.5% of the settlement's total value. SPA-24-25. The court ultimately approved the settlement with a reduced fee award that, using the court's own calculation method, still captured a whopping 73% of the total settlement value for the attorneys—and an even greater 76% if one applies the calculation method used by the Seventh Circuit in *Redman*. The district court justified this fee award by simply diverting to a lodestar-based analysis and referring to the segregated fund from which it was drawn. But no matter what road the court took, the objective destination was the same: the settlement paid the overwhelming majority of the settlement benefit to the attorneys in violation of Rule 23 and basic notions of fairness.

This result contradicts *Moses* and the text of the Rule itself. *Moses* is clear that "the relief actually delivered to the class" is critical in determining an appropriate fee award, and that courts are required to "'examine whether the attorneys' fees arrangement shortchanges the class.'" 79 F.4th at 244 (quoting *Briseño*, 998 F.3d at 1024). "The new

Rule 23(e) makes clear that courts must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Id.* (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)) (cleaned up). The imbalance between the two revealed a deep unfairness here—both (i) the meager relief actually delivered (less than 5% of the illusory $20 million), and (ii) the excessive fee request itself and class counsel's request to be paid from a separate fund to thwart any effort by the court to re-allocate the benefit. That imbalance was not corrected by the district court's small reduction in the fee award—which still misallocated well over half the total settlement benefit to the attorneys.

The district court's error in failing to evaluate the fee vis-à-vis the actual class recovery contravenes not only the provisions of Rule 23(e)(2)(C) but longstanding precedent of this Court. For over twenty years, Rule 23 has noted that "it may be appropriate to defer some portion of the fee award until *actual payouts* to class members are known." Notes of Advisory Committee on 2003 Amendment to Rule 23 (emphasis added)); *id.* ("fundamental focus is on the result *actually achieved* for class members" (emphasis added)). That the (e)(2)(C) amendments were not intended to "displace" any circuit court factor such as the *Grinnell* factors does not make those features of the rule a nullity. Rather, Rule 23(e)(2)(C) sets forth *additional* requirements. The *Grinnell* factors are necessary but not sufficient to establish settlement fairness

in this Circuit. *Moses* confirmed that, while there was overlap between the two, "the rule now requires courts to expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." 79 F.4th at 244.

This Circuit requires there to "be some 'evidentiary foundation' in support of the proposed settlement." *Plummer*, 668 F.2d at 659. That evidentiary foundation was lacking where the court found that the fee award "will not affect the Class's recovery," and failed to analyze fairness with respect to the amount *actually* received by the class or even the amount actually *expected* to be received by the class. Of course the fee award affected the class recovery: A defendant only cares about the total payment, and the parties were able to influence if not control the amount claimed by the class. *See* Section I.A.

The Ninth Circuit illustrated this former point in *Briseño*: Consider a defendant's likelihood of agreeing to two different settlement options: (1) create a $10 million fund for class members and pay $3 million in fees to class counsel for a total payout of $13 million, or (2) create a $7 million fund and pay $4 million to class counsel for a total payout of $11 million. "A defendant would choose the second option because it would save $2 million, even though it shortchanges class members." 998 F.3d at 1025.

Like this circuit, the Ninth Circuit requires district courts to investigate the disproportion between fees and relief in claims-made

settlements, especially where the claims are meager, as they are here. To exemplify this requirement, in *Allen*, the Ninth Circuit found that the attorneys' fees were disproportionate because the $1.125 million fee award was three times the $373,675 in actual claimed funds that the class would receive. 787 F.3d at 1224 & n.4. In *Briseño*, the Ninth Circuit held that a settlement "reeks of collusion at the expense of the class members" where, among other things, "Class counsel will receive seven times more money than the class members." 998 F.3d at 1018. And in *Bluetooth*, the Ninth Circuit remanded because the district court, among other things, had made "no comparison between the settlement's attorneys' fee award and the benefit to the class or degree of success in the litigation" and "no comparison between the lodestar amount and a reasonable percentage award." 654 F.3d at 943. The Seventh, Tenth, and Eleventh Circuits agree. *See, e.g.*, *Williams v. Reckitt-Benckiser LLC*, 65 F.4th 1243, 1261 (11th Cir. 2023) (on remand, district court should consider *Briseño* and *Pearson*); *Fager v. CenturyLink Communs., LLC*, 854 F.3d 1167, 1177 (10th Cir. 2016) ("We see merit in an approach that ties attorney recovery to the amount actually paid to the class."); *Pearson*, 772 F.3d at 781.

The plain language of Rule 23(e)(2)(C)(ii) requires nothing less. "Effective" means "actual" or "producing, a desired, decisive, or desired effect." *Effective*, *Merriam-Webster* (online version, available at [https://www.merriam-webster.com/dictionary/effective](https://www.merriam-webster.com/dictionary/effective)) (last accessed

Jun. 6, 2024). "Effective typically describes things—such as policies, treatments, arguments, and techniques—that do what they are intended to do." *Id.* For example, one might describe a vaccine as "96% effective." How does one consider the "effectiveness of the method of distribution" without objectively and empirically *measuring* effectiveness? By the district court's light, the FDA can evaluate the effectiveness of a vaccine by asserting "it could potentially work" without looking at any results. *Compare* A-604. It is nonsense to judge effectiveness in a vacuum without considering whether the methods "d[id] what they [we]re intended to do": actually deliver money to the class. The district court erred in failing to apply Rule 23(e)(2)(C)(ii) so.

Here, class counsel's Rule 23(h) award was more than triple the $994,000 paid to the class. The parties not only agreed to the disproportionate allocation through the amounts provided for in the settlement (which anticipated an even higher award for class counsel); they took further steps to lock in that allocation. They (1) structured the millions in attorneys' fees to come from a separate pot of money such that the district court could not shift any of the attorneys' fees to the class to remedy the disproportion, and (2) created a claims process that was intended to, and did, discourage class members from filing claims—resulting in the overwhelming bulk of the $20 million purportedly "made available" remaining in Kimberly-Clark's treasury. Meanwhile, Kimberly-Clark negotiated a release of claims from a nationwide class.

This was "breathtaking coverage," as the district court observed: a 14-year period and nationwide scope of the release compared to the more limited state-specific class certified earlier in the case. A-523:20.

The claims process here was not designed to overcome any of the reasons that claims rates tend to be abysmal in class-action settlements. The parties provided class notice only through publication, meaning ads on websites and social media, with no direct notice to consumers known to have purchased the products at issue. A-380-382. The process of submitting a claim was onerous, requiring class members to obtain a customer ID, giving multiple error messages, and providing a toll-free number that no one answered nor responded to messages from class members. A-458-460. Meanwhile, the process of submitting a paper claim required printing and mailing a four-page paper claim form that, for the vast majority of class members without proof of purchase, would yield at most a mere $7. A-459. The settlement website also made it even more unlikely that class members would obtain the higher proof-of-purchase recovery, because it incorrectly informed class members that the only acceptable form of documentation is "itemized receipts." A-458-459. But the settlement allows class members to submit an actual label or bar code portion of the package as proof of their purchase. A-354.

With recovery capped at a meager $7 for class members who had failed to hoard receipts for consumable flushable wipes products

purchased years earlier, there was little motive for someone to take the time to jump through the hoops of filing a claim.

Any claim by Kimberly-Clark that a cap greater than $7 would have resulted in a windfall for claimants is unsupported. The complaints sought more than $7 per class member and included noncompensatory damages as well. *See, e.g.*, A-170 (seeking statutory, compensatory, and punitive damages for violating New York General Business Law §§ 349 and 350). At the very minimum, the § 349 New York Business Law claims allowed class members to recover the greater of actual damages or fifty dollars. And class members are releasing property damage claims that have not been fully vetted or litigated. Those class members with proof of purchase are eligible to recover $50.60, and there is not any evidence that even a $50.60 recovery provides full and total relief. And the settlement does not allow class members to obtain this higher recovery by submitting a sworn statement or other means; rather, it unreasonably requires them to have saved decade-old receipts or packing materials. In short, the parties negotiated a settlement that foreclosed *pro rata* recovery for the class, made it difficult for class members to claim even the bare minimum of $7, and also precluded any rebalancing of the fees to supplement class relief.

Finally, the precedent- and text-based protections for the class don't fly out the window just because a district court chooses to calculate fees using a lodestar rather than a percentage-of-the-fund approach. The

parties might argue that both the long duration of the case and the district court's use of a lodestar rather than percentage-of-the-fund method allow this Court to affirm. Not so. For example, the Ninth Circuit decided *Briseño* after ten years of litigation, including a Supreme Court *certiorari* petition, and a fee award well below lodestar. 998 F.3d at 1019, 1021.

Rule 23(e) contains no exception to its fairness requirements where attorneys' fees are paid using the lodestar rather than percentage-of-the-fund method. Rather, even where a district court uses a lodestar calculation, it still must "consider[] the relationship between the amount of the fee awarded and the results obtained." *Bluetooth*, 654 F.3d at 944 (internal quotation marks omitted). It makes no difference under Rule 23(e)(2) whether the fees are paid from a common fund or "otherwise." *Briseño*, 998 F.3d at 1023. That class counsel was awarded close to their lodestar—with the reduction largely to account for their own poor billing practices—shows that they were willing to compromise the class's claims for a tiny fraction of the value of those claims, but were not willing to make a similar compromise for themselves.

A different holding would rationalize perverse results: plaintiffs with a weak case would be incentivized to multiply proceedings and drag out litigation because they could realize a lodestar award with longer litigation, but would be trapped with a smaller award from a percentage of the fund otherwise. "Plaintiffs attorneys don't get paid simply for

working; they get paid for obtaining results." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182 (9th Cir. 2013); *see also* Notes of Advisory Committee on 2003 Amendments ("fundamental focus is the result actually achieved for class members"). This circuit's firm stance that in no event may fees "exceed what is 'reasonable' under the circumstances," *Goldberger*, 209 F.3d at 47, serves the important purpose of ensuring public confidence in the class-action device and "is vital to the proper enforcement of substantive law," *Laffitte v. Robert Half Int'l*, 376 P.3d 672, 692 (Cal. 2016) (Liu, J., concurring); *see also Piambino v. Bailey*, 757 F.2d 1112, 1114 (11th Cir. 1985).

The settlement approval order must be vacated under Rule 23.

## C. The district court erred in considering the "red flag" of a fee reversion to the defendant a benefit to the class under Rule 23(e)(2)(C)(iii).

The self-dealing here not only included a disproportionate fee, but a segregated fund for the proposed attorneys' fees that would (and did!) revert to the defendant rather than the class. These are convincing "red flag" indications of a lawyer-driven settlement. *See generally Briseño*, 998 F.3d at 1026-27; *accord Pearson*, 772 F.3d at 786-87. The combination unfairly insulates the fee request from scrutiny: it is "a strategic effort to insulate a fee award from attack." Charles Silver, *Due Process and the Lodestar Method*, 74 Tulane L. Rev. 1809, 1839 (2000). A class member who objects to an excessive fee request would have to do so *pro bono*:

because the fee reduction would create no benefit for the class, the class member would not be entitled to attorneys' fees for his success. And segregation has the potential to shield an excessive fee award from appellate review: an objector would not have standing to challenge the fee award if she does not also challenge the settlement approval.[5] Thus, the segregation is a "gimmick" that courts should reject as unfair. *Pearson*, 772 F.3d at 786.

The Ninth Circuit describes why segregated funds are unfair to class members. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Bluetooth*, 654 F.3d at 949. "[T]here is no apparent reason the class should not benefit from the excess allotted for fees." *Id*; *accord Briseño*, 998 F.3d at 1027; *see also Pearson*, 772 F.3d at 786-87 (reversion clause has "strong presumption of [] invalidity"); *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (highlighting reversion as a "questionable provision" that should have been "deleted").

---

[5] *Contrast Silverman v. Motorola, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (no standing for objector who only challenges attorneys' fees without challenging settlement when objector cannot benefit from fee reduction) *and Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084 (9th Cir. 2011) (same) *with Bluetooth*, 654 F.3d at 949 n.9 (objectors who challenge disproportionate fee as part of challenge to Rule 23(e) approval of $0 settlement have appellate standing).

The district court erred in ignoring the economic reality and effect of this settlement structure, making the upside-down finding that "the attorneys' fee award will not affect the Class's recovery." SPA-15. But the class *was* prejudiced in exactly the way *Bluetooth* anticipated. The district court reduced the Rule 23(h) request from $4.1 million to $3.3 million. The segregated fund meant that that $0.8 million that Kimberly-Clark was willing to pay to obtain a release from the class ended up as a windfall in Kimberly-Clark's pockets, instead of going to the class. The segregated fund was unfair under Rule 23(e)(2)(C)(iii), and the district court erred in failing to recognize this.

## Conclusion

For these reasons, this Court should reverse the district court's approval of the settlement.

Dated: June 7, 2024          Respectfully submitted,

*/s/ Anna St. John*
Theodore H. Frank
Anna St. John
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (917) 327-2392
Email: anna.stjohn@hlli.org

*Attorney for Objector-Appellant*
*Theodore H. Frank*

**Certificate of Compliance
with Fed. R. App. 32(a)(7)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 9,473 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

Executed on June 7, 2024.

*/s/ Anna St. John*
Anna St. John

## Certificate of Service

I hereby certify that on June 7, 2024, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Second Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.

*/s/ Anna St. John*

Anna St. John

**SPECIAL APPENDIX**

# TABLE OF CONTENTS

**Page**

Amended Memorandum and Order of the
Honorable Pamela K. Chen, dated January 17,
2024, Appealed From.............................................. SPA-1

Judgment, dated March 15, 2024, Appealed From,
No. 14-cv-01142 .................................................... SPA-39

Judgment, dated March 15, 2024, Appealed From,
No. 15-cv-02910 .................................................... SPA-41

Federal Rule of Civil Procedure 23. Class Actions ... SPA-43

SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

                 Plaintiffs,                    **<u>AMENDED MEMORANDUM & ORDER</u>**
                                           14-CV-1142 (PKC) (RML)

          - against -

KIMBERLY-CLARK CORPORATION and
COSTCO WHOLESALE CORPORATION,

                 Defendants.
-------------------------------------------------------x
GLADYS HONIGMAN; and D. JOSEPH
KURTZ, Individually and on Behalf of
All Others Similarly Situated,

                 Plaintiffs,

         -against-                         15-CV-2910 (PKC) (RML)

KIMBERLY-CLARK CORPORATION,

                 Defendant.
-------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

       D. Joseph Kurtz ("Kurtz") and Gladys Honigman ("Honigman") (together, "Plaintiffs"),

on behalf of two putative classes (the "Class" or "Class Members"), bring the instant class action

lawsuits against Defendant Kimberly-Clark Corporation ("Defendant" or "Kimberly-Clark") and

Costco Wholesale Corporation (together with Kimberly-Clark, "Defendants"), alleging that

Defendants falsely labeled and advertised their wipe products as "flushable" and seeking damages

under New York General Business Law.  Currently before the Court for approval is Plaintiffs' fee

application for Class Counsel's[1] attorneys' fees and litigation expenses and class representative

---

[1] Class Counsel in these two actions are members (including former members) of Robbins
Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm"), a 200-lawyer firm with offices
nationwide.  (*See* Decl. of Vincent M. Serra ("Serra Decl. I"), Ex. B, *Kurtz v. Kimberly-Clark Co.*,

incentive awards, pursuant to a class settlement agreement (the "Settlement Agreement" or "Settlement") entered into by Plaintiffs and Defendant Kimberly-Clark and finally approved by this Court. For the reasons set forth below, Plaintiffs' request is granted in part and denied in part.

**BACKGROUND**[2]

**I.      Relevant Factual and Procedural History**

In April 2022, eight years after the instant lawsuits were initiated, Plaintiffs and Defendant Kimberly-Clark (the "Parties") entered into the Settlement Agreement, which, together with the exhibits attached thereto, sets forth the terms and conditions for a proposed settlement and the dismissal of the instant class action lawsuits as to Defendant. (*See generally* Settlement Agreement & General Release ("Settlement Agreement"), Dkt. 432-1.) Plaintiffs moved for preliminary approval of the Settlement (Dkts. 430–32), which the Court granted on May 19, 2022 (Dkt. 439). On August 3, 2022, Plaintiffs moved for final approval of the Settlement and applied for fees. (Dkts. 442–45.) In response to Plaintiffs' motion for final approval, class member Theodore H. Frank ("Objector") filed an objection to the Settlement and fee application, contending that the Settlement failed to meet the fairness standard under Federal Rule of Civil Procedure ("Rule") 23(e) and that the requested fees were unreasonable. (*See generally* Obj. of Theodore H. Frank to

---

No. 14-CV-1142 (PKC) (RER), Dkt. 445, at ECF 25.) Lead Counsel are members of the Firm's Melville office in New York. (*See* Serra Decl. I, Exs. A, D, G, Dkt. 445; *Kurtz v. Kimberly-Clark Co.*, No. 14-CV-1142 (PKC) (RER)). The Court notes that citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination. Hereafter, all citations to the ECF docket refer to *Kurtz v. Kimberly-Clark Co.*, No. 14-CV-1142 (PKC) (RER), unless otherwise stated.

[2] The procedural history and factual background of this litigation has been detailed extensively in various opinions by the Court, including the Court's June 12, 2023 Memorandum & Order finally approving the Settlement Agreement and certifying the settlement class. (*See, e.g.*, Memorandum & Order ("Mem. & Order"), Dkt. 471, at 2–6.) Therefore, the Court assumes the Parties' familiarity with the general background of this case and repeats only the information necessary to resolve the instant request.

SPA-3

Proposed Class Action Settlement & Att'ys' Fee Request ("Objector's Br."), Dkt. 446.)  On June 12, 2023, after holding two final settlement approval hearings (*see* 9/7/2022 Minute Entry; 11/7/2022 Minute Entry), the Court finally approved the Settlement and certified the settlement class, as well as scheduled a hearing on Class Counsel's fees.  (*See* Mem. & Order, Dkt. 471, at 30.)

A week before the scheduled hearing, Plaintiffs filed a notice of supplemental authority apprising the Court of a Second Circuit opinion issued in August 2023, *Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023).  (Dkt. 472.)  On September 13, 2023, the Court informed the Parties that the Court would discuss the impact of the *Moses* decision on the finally-approved Settlement at the upcoming hearing on Class Counsel's fees.  (*See* 9/13/2023 Docket Order.)

On September 19, 2023, the Court held the fees hearing.  (*See* 9/19/2023 Minute Entry.) Class Counsel, Defendant's counsel, and Objector's counsel participated.  (*See id.*)  At the hearing, the Court informed the Parties and Objector that, in light of *Moses*, it would re-open its prior decision finally approving the Settlement and re-analyze whether the Settlement is substantively fair.  (*Id.*; Tr. of Class Counsel's Fees Hr'g ("Tr."), 3:20–7:18.)  The Court also heard Class Counsel's and Objector's arguments regarding the fee application, including the appropriate method for calculating the fees.  (Tr. 9:24–18:21.)  The Court directed Class Counsel to submit for *in camera* review unredacted contemporaneous billing records (Tr. 28:13–17), and informed the Parties that it would resolve the fee petition in tandem with its reevaluation of the Settlement's substantive fairness as required by *Moses* (Tr. 4:24–5:5).  As directed, Class Counsel subsequently submitted their billing records to the Court.  (*See* Dkt. 473.)

## II.    Plaintiffs' Fee Application

### A.    Terms of the Proposed Fee Award

Under the terms of the Settlement Agreement, Plaintiffs may apply to the Court for an award of attorneys' fees and expenses in a total amount not to exceed $4,100,000.  (Settlement Agreement, Dkt. 432-1, ¶ 6.1, at ECF 22.)  In addition, Plaintiffs may apply to the Court for class representative incentive awards of $10,000 for Kurtz and $5,000 for Honigman "as compensation for their time and effort undertaken in the Actions."  (*Id.* ¶ 6.2, at ECF 23.)  The Parties also agree that Defendant will pay any attorneys' fees, expenses, incentive awards, and settlement administration costs "separate and apart from" the $20 million fund made available to the Class.  (*Id.* ¶ 2.5, at ECF 15.)  With respect to the timing of payment, Defendant will pay such fee awards to Plaintiffs and Class Counsel within 30 calendar days following the Court's issuance of an order granting the fee application.  (*Id.* ¶ 6.4, at ECF 23.)

### B.    Class Counsel's Fee Request

Plaintiffs seek a total fee award of $4,100,000, consisting of $3,961,668.77 in attorneys' fees, $138,331.23 in litigation expenses and charges, and $10,000 and $5,000 in incentive awards for Kurtz and Honigman, respectively.  (Pls.' Mem. in Support of Final Approval of Settlement, Application for An Award of Att'ys' Fees & Expenses, & Class Representative Payments ("Pls.' Settlement Br."), Dkt. 443, at 2, 18–19, 25.)  As to the method for calculating the attorneys' fees, Plaintiffs request that the Court use the lodestar method.  (*Id.* at 19–21.)

### C.    Objections

Objector challenges Plaintiffs' fee request.  (*See generally* Objector's Br., Dkt. 446.)  Citing to the 2018 Amendments to Rule 23(e), Objector contends that attorneys' fee awards should be "focused on the actual result for the class so as to encourage class counsel to achieve the best possible result for the class."  (*Id.* at 5.)  Objector argues that the requested attorneys' fees are

4

SPA-5

excessive and disproportionate to the actual recovery for the Class.  (*Id.* at 13–14.)  Objector also challenges the provision in the Settlement Agreement that provides advance payment to Class Counsel before the recovery benefits are distributed to the Class.  (*Id.* at 14–15.)  While Objector argues that the Court should use the percentage-of-recovery method to calculate attorneys' fees, he reiterates that, regardless of the method applied, "the actual benefit to the class [should be] a fundamental focus for the Court's fee award."  (*Id.* at 1.)

**LEGAL STANDARD**

**I.      Settlement Approval Under Rule 23(e)(2): Fairness, Reasonableness, and Adequacy**

"[Rule 23(e)] sets forth the standards and procedures that apply to class action settlements." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) [hereinafter "*In re Payment Card I*"].  Under Rule 23(e)(2), a district court may approve a class action settlement only upon "finding that it is fair, reasonable, and adequate."  *Moses*, 79 F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2)).  To make that determination, a court should expressly evaluate four "primary procedural considerations and substantive qualities that should always matter" in its "holistic" review of a proposed settlement.  *Id.* (quoting Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment (the "2018 Advisory Note")).  These four considerations include whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

5

SPA-6

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"The first two factors are procedural in nature," *Moses*, 79 F.4th at 242, and "examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *In re Payment Card I*, 330 F.R.D. at 29 (quoting 2018 Advisory Note). The latter two factors "guide the substantive review of a proposed settlement," *Moses*, 79 F.4th at 244, assessing "[t]he relief that the settlement is expected to provide to class members . . . ." *In re Payment Card I*, 330 F.R.D. at 29 (quoting 2018 Advisory Note).

Specifically, in evaluating the substantive fairness of a proposed settlement, a court must expressly consider the "two core factors" under Rule 23(e)(2)(C)–(D): "the adequacy of relief provided to a class" and "the equitable treatment of class members." *Moses*, 79 F.4th at 244. In particular, such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the settlement agreement. *Id.* Importantly, "the revised Rule 23(e)(2) does not displace" the nine-factor test set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors")[3] that courts

---

[3] The nine *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund [compared] to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

6

SPA-7

have traditionally applied, "which remain a useful framework for considering the substantive fairness of a settlement." *Moses*, 79 F.4th at 243.

## II.   Attorneys' Fees, Litigation Expenses, and Class Representative Incentive Awards

### A.   Attorneys' Fees

Under Rule 23(h), "the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In a class action settlement, the court must carefully scrutinize class counsel's application for attorneys' fees to "ensure that the interests of the class members are not subordinated to the interests of . . . class counsel." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).  The court's role in this context is "to act as a fiduciary who must serve as a guardian of the rights of absent class members." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (internal quotation marks and citation omitted).

Courts commonly employ either the "percentage of the fund method" or the "lodestar method" to evaluate the reasonableness of an attorneys' fee award in a class action settlement. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49–50 (2d Cir. 2000).  Irrespective of which method is used, "district courts should continue to be guided by the traditional criteria" identified in *Goldberger* (the "*Goldberger* factors") in analyzing the reasonableness of attorneys' fees, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.*  (internal quotation marks and citation omitted).  In addition to the *Goldberger* factors, "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Moses*, 79 F.4th at 244 (quoting 2018 Advisory Note).  Additionally, attorneys must submit contemporaneous time

7

records to support their fee applications. *See N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

### B.    Litigation Expenses

In class action settlements, "[c]ourts may reimburse counsel for expenses reasonably and necessarily incurred in litigating a class action." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *18 (D. Conn. Nov. 3, 2016);   *see also Jermyn v. Best Buy Stores, L.P.*, No. 8-CV-214 (CM), 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).  "When the 'lion's share' of expenses reflects the typical costs of complex litigation such as 'experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses,' courts should not depart from 'the common practice in this Circuit of granting expense requests.'" *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (quoting *In re Visa/Mastermony Antitrust Litig.*, 297 F. Supp. 3d 503, 525 (E.D.N.Y. 2013)).

### C.    Class Representative Incentive Awards

"[C]lear precedent [in this Circuit] . . . permits district courts to approve fair and appropriate incentive awards to class representatives," in addition to their allocable share of the ultimate recovery. *Moses*, 79 F.4th at 253 (citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019)).  "[T]he decision to grant the award, and the amount thereof, rests solely within the discretion of the [c]ourt." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (citing *Roberts v. Texaco*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).  "The guiding standard in determining

SPA-9

an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (*e.g.*, factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery." *Roberts*, 979 F. Supp. at 200. "Awards on an individualized basis have generally ranged from $2,500 to $85,000." *Dial Corp.*, 317 F.R.D. at 439. However, courts should "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members" to "ensure that [such] awards are reasonable and promote equity between class representatives and absent class members." *Moses*, 79 F.4th at 245.

## DISCUSSION

### I.     The Settlement Agreement is Substantively Fair Under *Moses*

Under the Second Circuit's newly established precedent in *Moses*, the Court finds that the Settlement Agreement in this case satisfies all four factors under Rule 23(e)(2), as well as the *Grinnell* factors. As such, the Court concludes that the Settlement Agreement is substantively fair, subject to the reduction of the requested attorneys' fees.

### A.     The Second Circuit's Case Law on Settlement Fairness Prior to *Moses*

Prior to *Moses*, courts in the Second Circuit applied a presumption of fairness to proposed settlement agreements that resulted from arm's-length negotiations, and relied on the *Grinnell* factors to determine fairness, adequacy, and reasonableness without expressly assessing *all* four Rule 23(e)(2) factors. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (internal quotation marks and citation omitted)); *McReynolds v. Richards-*

*Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement is reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (internal brackets and citation omitted)); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (concluding that a class action settlement "represent[ed] a fair, adequate and reasonable result for the class" after attaching a presumption of fairness to the settlement and analyzing the *Grinnell* factors).

### B. The Second Circuit's New Precedent on Settlement Fairness in *Moses*

In *Moses*, a newspaper customer brought a putative class action against a publisher, alleging that the publisher had automatically renewed her subscription without providing the disclosures and authorizations required by California's Automatic Renewal Law. *See First Am. Class Action Compl. & Demand for Jury Trial* ¶ 1, at 1–2, *Moses v. N.Y. Times Co.*, No. 1:20-CV-4658 (RA) (S.D.N.Y. Aug. 31, 2020), Dkt. 22. The district court certified a class for settlement purposes under Rule 23(b)(2) and finally approved the settlement. *See Moses v. N.Y. Times Co.*, No. 1:20-CV-4658 (RA), 2021 WL 4931657, at *1–2 (S.D.N.Y. Sept. 13, 2021), *vacated & remanded*, 79 F.4th 235 (2d Cir. 2023). Specifically, the district court applied a presumption of fairness, adequacy, and reasonableness to the proposed settlement after evaluating only two of the four core factors under Rule 23(e)(2)—namely whether the named plaintiff in the action adequately represented the class under Rule 23(e)(2)(A) and whether the settlement agreement was reached in an arm's-length negotiation under Rule 23(e)(2)(B). *Id.* at *2.

The objector in *Moses* appealed the district court's judgment finally approving the settlement, arguing that the court erred because, *inter alia*, (1) it applied the wrong legal standard "when it imposed a presumption of fairness, adequacy, and reasonableness to the parties' proposed class-action settlement on the ground that it was negotiated between the settling parties at arm's

length," and (2) it failed to consider the attorneys' fee award and incentive award in evaluating the settlement's fairness, reasonableness, and adequacy.  Appellant's Opening Br. at 21, 25, *Moses v. N.Y. Times Co.*, No. 21-2556, Dkt. 40 (2d Cir. Jan. 26, 2022).

The Second Circuit agreed with the objector on both grounds.  As an initial matter, the panel recounted the historic practice of applying the *Grinnell* factors to evaluate fairness, reasonableness, and adequacy under Rule 23(e).  *Moses*, 79 F.4th at 242.  Then, the panel highlighted that Congress recently revised the rule "to include a list of four 'primary procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal.'"  *Id.* (quoting 2018 Advisory Note).  The *Moses* panel emphasized that the amended Rule 23(e) "now mandates courts to evaluate factors that may not have been highlighted in [this Circuit's] prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements."  *Id.* at 243.  The panel then explained the rule's requirements and clarified the correct legal standard in evaluating fairness, reasonableness, and adequacy of a proposed settlement agreement.  *Id.* at 242–46.

The Second Circuit held that the district court erred because it presumed that the proposed settlement was fair, reasonable, and adequate solely because it was reached through an arm's-length negotiation, without evaluating all four factors codified in Rule 23(e)(2).  *Id.* at 243.  The panel explained that "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length" "because the rule 'does not suggest that an affirmative answer to that one [factor] creates a favorable presumption on review of the other three.'"  *Id.* (citation omitted).

In addition, the Second Circuit agreed that the district court erred because it evaluated the proposed fees, including attorneys' fees and the incentive award, "separately" from its inquiry into

the settlement's fairness, reasonableness, and adequacy. *Id.* at 242–46. While courts in this Circuit historically "evaluate[d] substantive fairness [by] considering the nine *Grinnell* factors," which largely overlap with the revised Rule 23(e)(2), the *Moses* court emphasized that the "rule now requires courts to expressly consider two core factors [under Rule 23(e)(2)(C)–(D)] when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Id.* at 244.

As to the adequacy of class relief under Rule 23(e)(2)(C), the Second Circuit instructed that "the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem," and that "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Id.* (internal quotation marks and citations omitted). The panel further explained that this "symbiotic review of proposed relief and attorneys' fees aligns with [t]he express goal of [the] *Grinnell* opinions [which] was to prevent unwarranted windfalls for attorneys." *Id.* (internal quotation marks and citation omitted).

With respect to the equitable treatment of class members under Rule 23(e)(2)(D), the *Moses* panel explained that courts evaluating the substantive fairness of a settlement now must consider proposed incentive awards to ensure that the awards are "reasonable and promote equity between class representatives and absent class members." *Id.* at 245. Although courts must expressly consider the two factors in Rule 23(e)(2)(C)–(D), the panel also noted that "the revised Rule 23(e)(2) does not displace [the] traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Id.* at 243.

In sum, under the Second Circuit's interpretation of the revised Rule 23(e)(2) in *Moses*, courts in this Circuit "must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account—among other substantive considerations stated in the rule—the proposed attorneys'

fees and incentive awards" in evaluating fairness of a proposed settlement.  *Id.*  In addition, courts may use the traditional *Grinnell* factors to guide such evaluations.

### C.     Substantive Fairness Revisited in Light of *Moses*

In its June 12, 2023 Memorandum & Order finally approving the Settlement, the Court, consistent with pre-*Moses* precedent, applied a presumption of fairness based on the Parties' arm's-length negotiations[4] and concluded that the Settlement was fair, adequate, and reasonable by analyzing the *Grinnell* factors.  (*See* Mem. & Order, Dkt. 471, at 14–29.)  "Given the substantial overlap between the traditional *Grinnell* factors and the Rule 23(e)(2) factors," *Moses* "does not automatically require the reversal of the [S]ettlement's approval."  *Moses*, 79 F.4th at 246. However, the Court revisits its prior decision out of an abundance of caution.  In re-analyzing whether the Settlement is substantively fair, reasonable, and adequate, the Court considers both the *Grinnell* factors and the Rule 23(e)(2) factors.  Specifically, the Court expressly evaluates the two core factors under Rule 23(e)(2)(C)–(D) and reviews the appropriateness of the proposed fees—including attorneys' fees, litigation expenses, and incentive awards—in assessing the overall fairness of the Settlement.

For the following reasons, the Court finds that the Rule 23(e)(2)(C)–(D) factors and the *Grinnell* factors weigh in favor of finding that the Settlement is substantively fair and warrants final approval, subject to the reduction of the requested attorneys' fees.

---

[4] In its June 12, 2023 Memorandum & Order, the Court also evaluated the "adequacy of representation" under Rule 23(a).  (*See* Mem. & Order, Dkt. 471, at 9–13.)  Given the Court's prior finding of adequacy under Rule 23(a) (*id.*), and the similarity of analyses regarding adequacy of representation under Rule 23(e)(2)(A) and Rule 23(a)(4), the Court finds that the class representatives and Class Counsel provided adequate representation to the putative classes under Rule 23(e)(2)(A).  *See In re Payment Card I*, 330 F.R.D. at 54 (holding that the court will likely find that class representatives and class counsel have provided adequate representation under Rule 23(a) after finding adequate representation by class representatives and class counsel under Rule 23(e)(2)(A)).

SPA-14

### 1.   Rule 23(e)(2)(C): Adequacy of Class Relief

In assessing whether a proposed settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), a district court must take into account several factors, including: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C). The Court notes that this "inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)."  *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP,* 333 F.R.D. 314, 321 (S.D.N.Y. 2019).

> a.   Rule 23(e)(2)(C)(i) and (ii): Costs, Risk, Delay of Trial and Appeal, and Effectiveness of Proposed Method of Distributing Relief to the Class

The Court previously considered the factors set forth in Rule 23(e)(2)(C)(i) and (ii) and found that they all favored granting final approval of the Settlement.  (*See* Mem. & Order, Dkt. 471, at 23, 25–26, 28–29.)  Because *Moses* does not affect the analysis of these factors, the Court does not revisit that analysis and simply affirms its prior finding that these factors weigh in favor of final approval.

> b.   Rule 23(e)(2)(C)(iii): The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment

As instructed by *Moses*, the Court now addresses the other subsections of Rule 23(e)(2)(C). Rule 23(e)(2)(C)(iii) directs courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  "This review provides a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check."  *Moses,*

14

SPA-15

79 F.4th at 244 (quoting *Fresno Cty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019)).

Here, under the Settlement, Class Counsel may apply to the Court for an award of attorneys' fees and expenses in a total amount not to exceed $4,100,000. (Settlement Agreement, Dkt. 432-1, ¶ 6.1, at ECF 22.) Unlike in *Moses*, where "there [was] effectively an inverse correlation between the amount of attorneys' fees . . . and the cash available for . . . distribution to class member," *Moses*, 79 F.4th at 246, the Parties here have agreed that Defendant will pay any attorneys' fees award "separate and apart from" the settlement benefits made available to Class Members. (*Id.* ¶ 2.5, at ECF 15.) Because the attorneys' fee award will not affect the Class's recovery, the Court finds this aspect of the Settlement adequately protects the Class's interests. *See, e.g.*, *Hesse v. Godiva Chocolatier*, No. 1:19-CV-972 (LAP), 2022 U.S. Dist. LEXIS 7264, at *27 (S.D.N.Y. Apr. 20, 2022).

Regarding the timing of payment, the Parties stipulate that Defendant will pay the attorneys' fees, litigation expenses, and incentive awards to Class Counsel within 30 calendar days following the issuance of an order granting the fee application. (*Id.* ¶ 6.4, at ECF 23.) Objector argues that this "quick-pay" provision, which allows attorneys' fees to be paid before class claims, "indicates unfairness" under Rule 23(e)(2)(C)(iii).[5] (Objector's Br., Dkt. 446, at 14.) While a settlement provision providing for payment of attorneys' fees prior to the distribution of settlement funds among class members "does not bolster the case" for approval, "it also does not undercut

---

[5] Under the terms of the Settlement Agreement, "[a]ll Valid Claims shall be paid by the Claims Administrator within sixty (60) days after the Effective Date except that, in the event of an appeal from Final Approval that challenges only the award of attorneys' fees and expenses and/or the Class Representative Payments and does not challenge any other aspect of the Settlement, all Valid Claims shall be paid within ninety (90) days after Final Approval, unless otherwise ordered by the Court." (Settlement Agreement, Dkt. 432-1, ¶ 2.9, at ECF 16–17.)

that case where, as here, the majority of other factors weigh significantly in its favor." *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349, 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021). Given that the amount the Class recovers will not be affected by the amount or payment of attorneys' fees to Class Counsel, this timing provision does not result in any unfairness to Class Members. Therefore, the Court finds the terms of the proposed award of attorneys' fees to be reasonable under Rule 23(e)(2)(c)(iii), subject to the reduction of the requested attorneys' fees as explained below. *See infra* Discussion Section II.A.

> c.  Rule 23(e)(2)(C)(iv): Any Agreement Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) mandates that courts consider "any agreement required to be identified under Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(c)(iv); *Johnson*, 333 F.R.D. at 322. Here, because "[t]here are no side agreements pertaining to the Settlement Agreement that are required to be identified under Rule 23(e)(3)" (Pls.' Settlement Br., Dkt. 443, at 18 n.12), this factor has no bearing on the final approval analysis.

### 2.  Rule 23(e)(2)(D): Equitable Treatment of Class Members

The Court now considers the other Rule 23(e)(2) factor that it did not previously analyze, Rule 23(e)(2)(D), which requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In evaluating this factor, courts may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Moses*, 79 F.4th at 245 (quoting 2018 Advisory Note). Particularly, after *Moses*, "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Id.* (quoting

Fed. R. Civ. P. 23(e)(2)(D)).  In "evaluating the substantive fairness of a settlement[, courts] must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." *Id.*  In doing so, courts must not only ensure that a settlement protects "the interests of class representatives who play an active role in the litigation— often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process—from having absent class members free ride on their efforts," but they must also "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* (internal quotation marks omitted).

Here, under the Settlement Agreement, a Class Member with proof of purchase can receive a payment of up to $50.60, and one without such proof of purchase can receive up to $7. (Settlement Agreement, Dkt. 432-1, ¶ 2.4, at ECF 14–15.)  Thus, the Settlement Agreement applies to all Class Members equally as "they are each entitled to receive the same payment based on the number of [Defendant's product packages] they purchased and whether they have documented Proof of Purchase."  *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *28.  Additionally, the Settlement Agreement subjects all Class Members to the same release condition.  (*See* Settlement Agreement, Dkt. 432-1, ¶¶ 7.1–7.2, at ECF 23–24.)  Because "the scope of the release applies uniformly to putative class members," it "does not appear to affect the apportionment of the relief to class members."  *In re Payment Card I*, 330 F.R.D. at 47.

As to the incentive awards, Kurtz and Honigman seek incentive awards of $10,000 and $5,000, respectively, to compensate them for their efforts and personal time spent aiding Class Counsel in prosecuting the litigation on behalf of the Class.  (Decl. of Dr. D. Joseph Kurtz ("Kurtz Decl."), Dkt. 444-1, ¶ 2, at ECF 3; Decl. of Gladys Honigman ("Honigman Decl."), Dkt. 444-2,

¶ 2, at ECF 3.)  By comparison, under the Settlement, a Class Member with proof of purchase is only entitled to recover up to $50.60, and one without such proof of purchase up to $7.  (Settlement Agreement, Dkt. 432-1, ¶ 2.4, at ECF 14–15.)  The contrast is even starker when looking at the recovery actually paid to the Class.  According to Class Counsel's calculations as of September 19, 2023, the average claim actually conferred on Class Members is $6.73, with $30.90 being the average for Class Members with proof of purchase and $6.28 for those without proof of purchase.  (Tr. 9:12–14.)

Although the Court recognizes that the requested incentive awards are vastly larger than the average recovery for individual Class Members, the Court finds that they are reasonable in light of the circumstances of this case.  Large incentive awards, such as the two requested here, ordinarily might be deemed too disproportionate to the average class member's recovery to be equitable,  *see, e.g.*, *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *44 (reducing named plaintiffs' requested service awards "in light of the *de minimis* recovery by the members of the Class"); *Reynolds v. Marymount Manhattan Coll.*, No. 1:22-CV-6846 (LGS), 2023 WL 6977635, at *3 (S.D.N.Y. Oct. 23, 2023) (finding a reduced service award to be "justified because it [was] comparable to the available recovery to class members for ordinary losses and significantly less than the available recovery for other documented losses"); however, the special circumstances in this case justify these awards.  First, the Settlement in this matter was reached after more than eight years of intensive litigation that involved substantial discovery, motion practice, and two appeals to the Second Circuit.  (*See* Decl. of Vincent M. Serra ("Serra Decl. II") ¶¶ 6–32, Dkt. 444, at 3–15.)  The length and intensity of this lawsuit logically necessitated more extensive services and work by the named Plaintiffs, and such contributions to the litigation justify additional compensation. *See, e.g.*, *Norflet ex rel. Norflet v. John Hancock Life Ins. Co.*, 658 F. Supp. 2d

350, 351, 353–54 (D. Conn. 2009) (finding that the named plaintiff "should be awarded $20,000 as an incentive award, an amount that is reasonable and equitable as an incentive award for the time she spent in deposition, responding to discovery, and/or otherwise working with Class Counsel to prosecute and resolve this case" during several years of intensive litigation).  Here, Kurtz and Honigman each spent "a considerable amount of time performing actions that benefitted the Settlement Class at large," such as "detailing [their] experience with the products at issue to Settlement Class Counsel and the Court;" "reviewing . . . various pleadings, motions, briefs, orders, and correspondence related to the Litigation, including the initial complaint, status updates," and numerous court orders; "searching for and producing documents;" and "reviewing and responding to Defendant's interrogatories[.]"  (Kurtz Decl., Dkt. 444-1, ¶ 3, at ECF 3; Honigman Decl., Dkt. 444-2, ¶ 3, at ECF 3.)   Kurtz also provided other services, including reviewing additional documents (such as "the opposition to Defendant's motion to dismiss the complaint" and "briefs submitted in connection with class certification and the appeal"), "preparing and sitting for his deposition[,]" and "making his homes (and their plumbing systems) . . . available over the course of two days for physical inspection by Defendant's consultant[.]"  (Kurtz Decl., Dkt. 444-1, ¶ 3, at ECF 3.)[6]  In order to comply with their ethical obligations, Class Counsel consulted with, and obtained approval from, the named Plaintiffs in pursuing the exhaustive litigation strategy pursued in these actions.  (Kurtz Decl., Dkt. 444-1, ¶ 4, at ECF 3; Honigman Decl., Dkt. 444-2, ¶ 4, at ECF 3.)   Furthermore, the price-premium theory of recovery that Plaintiffs ultimately would have pursued at trial, even if successful, likely would have yielded small average recovery amounts for

---

[6] Notably, the incentive award requested for Honigman is half the amount requested for Kurtz.  Presumably, this is because Honigman expended less time and services in connection with the lawsuit, as a result of the later filing of the *Honigman* litigation and the efficiencies achieved in *Honigman* based on the *Kurtz* litigation.  (*Compare* Kurtz Decl., Dkt. 444-1, ¶¶ 3, 6, at ECF 3–4 *with* Honigman Decl., Dkt. 444-2, ¶¶ 3, 6, at ECF 3–4.)

individual Class Members.  Finally, the incentive awards will be paid directly by Defendant, not at the expense of the Class.  *See Hart v. BHH, LLC*, No. 15-CV-4804, 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) (finding the requested incentive awards fair and reasonable because they were paid directly by defendants).  Thus, the Court finds that the incentive awards requested for Kurtz and Honigman, respectively of $10,000 and $5,000, are reasonable in light of the particular circumstances of these two cases.

### 3.    Remaining *Grinnell* Factors

In its June 12, 2023 Memorandum & Order finally approving the Settlement, the Court specifically considered the remaining *Grinnell* factors—including the reaction of the Class to the Settlement; the stage of the proceedings and the amount of discovery completed; the ability of Defendant to withstand a greater judgment; the range of reasonableness of the Settlement Fund in light of the best possible recovery; and the range of reasonableness of the Settlement Fund compared to a possible recovery in light of all the attendant risks of litigation—in conducting the substantive fairness inquiry.  The Court previously found and now affirms that each of these *Grinnell* factors supports final approval of the Settlement.  (*See* Mem. & Order, Dkt. 471, at 23–25, 26–28.)

\* \* \*

On the basis of the foregoing discussion, the Court finds that all four factors enumerated in Rule 23(e)(2) and the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement, subject to the reduction of the requested attorneys' fees.

## II.    Attorneys' Fees, Litigation Expenses, and Incentive Awards Request

Plaintiffs seek the Court's approval for an award of $3,961,668.77 in attorneys' fees, $138,331.23 in litigation expenses and charges, and $10,000 and $5,000 in incentive awards for named Plaintiffs Kurtz and Honigman, respectively.  (Pls.' Settlement Br., Dkt. 443, at 2, 18–19,

25.)  In accordance with the Settlement Agreement, Defendant has not opposed this fee request; however, Objector challenges the amount of the requested attorneys' fees for Class Counsel.  (*See* Dkts. 446, 460.)  For the reasons set forth below, the Court awards $3,169,335.02 in attorneys' fees and $138,331.23 in litigation expenses to Class Counsel, and incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively.

> **A.     Attorneys' Fees**

As an initial matter, the Court recognizes that the Settlement in this action is a claims-made settlement.  Unlike a common fund settlement, where class members share from a settlement pool, in a claims-made settlement, the extent of a defendant's liability "is wholly dependent upon the number of claims [filed by class members], the cost of administering the settlement and such fees and expenses as are assessed by the Court."  *Parker v. Time Warner Ent. Co.*, 631 F. Supp. 2d 242, 266 (E.D.N.Y. 2009).  In claims-based settlements, "where the parties agree to a fee that is to be paid separately by the Defendants rather than one that comes from, and therefore reduces, the Settlement Fund available to the class, 'the Court's fiduciary role in overseeing the award is greatly reduced' because 'the danger of conflicts of interest between attorneys and class members is diminished.'"  *Kemp-DeLisser*, 2016 WL 6542707, at *14 (quoting *Jermyn*, 2012 WL 2505644, at *9).  However, "that does not mean this Court's duty is that of a disinterested observer."  *Hart*, 2020 WL 5645984, at *6.  Rather, the Court must "still 'assess the reasonableness of the fee award' where the fee does not come from a common fund, because 'a defendant is interested only in disposing of the total claim asserted against it, and not in the allocation between the class payment and the attorneys' fees.'"  *Kemp-DeLisser*, 2016 WL 6542707, at *14 (citation omitted).

As to the best approach for calculating fee awards in claims-made settlements, courts in this Circuit are divided between the lodestar method and the percentage-of-fund method.  "[A]

SPA-22

number of courts have concluded that utilizing the percentage method would provide plaintiffs' counsel with a percentage of a 'hypothetical recovery,' and have instead opted to use the lodestar method, finding that it 'better accommodates the policy concerns in settling class actions on a claims-made basis.'" *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV) (RML), 2018 WL 3642627, at *15 (E.D.N.Y. July 30, 2018) (citation omitted); *see also Bodon v. Domino's Pizza*, No. 9-CV-2941, 2015 WL 3889577, at *5–7 (E.D.N.Y. June 4, 2015) (declining to employ the percentage-of-fund method and instead adopting the modified lodestar method, which better accommodates the policy concerns), *R&R adopted*, 2015 WL 3902405 (E.D.N.Y. June 24, 2015). Other courts, however, have adopted the percentage-of-fund method, as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation marks and citation omitted); *see, e.g.*, *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *32 (same).

In this case, Plaintiffs ask the Court to award attorneys' fees on a lodestar basis (Pls.' Settlement Br., Dkt. 443, at 19–20), while Objector urges the Court to use the percentage-based method because it "directly aligns class counsel's interests with those of the class" (Objector's Br., Dkt. 446, at 16). For the following reasons, this Court utilizes the lodestar method, which it considers to be a more accurate measure of attorneys' fees. Based on this method, the Court awards Class Counsel $3,169,335.02 in attorneys' fees, an amount that the Court finds is also supported by the *Goldberger* factors.

### 1.   Percentage-of-Fund Method

"Under the percentage method, the court calculates the fee award as some percentage of the funds made available to the Settlement Class." *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *33 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*,

*L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007)).  When applying the percentage-of-fund method to a claims-made settlement, there is some debate about whether the award should be based on a percentage of the total funds made available to the class or the smaller amount actually claimed by the class.  *See McLaughlin*, 2018 WL 3642627, at *15.  In other words, the question becomes "whether the unclaimed funds [should be] included in the denominator" for calculating the fee. *Hart*, 2020 WL 5645984, at *7.

        a.      <u>Total Funds Made Available Versus Actual Payment to the Class</u>

        Objector argues that the denominator should not be the total amount that Defendant would have had to pay had the claims process yielded a 100% response rate,[7] but rather the final actual settlement payout to the Class.  (Objector's Br., Dkt. 446, at 16.)  Regarding this issue, the Second Circuit held in *Masters v. Wilhelmina Model Agency, Inc.* that "[a]n allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not."  473 F.3d 423, 437 (2d Cir. 2007).  However, a number of district courts in this Circuit have held that *Masters* does not apply to claims-made settlements, where defendants retain the unclaimed portion of the settlement fund, instead opining that the benefits actually conferred to the class should be used.  *See, e.g.*, *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *34 (relying on the actual benefits paid to class members in applying the percentage method and distinguishing *Masters* "on the ground that the defendant there did not retain the unclaimed portion of the settlement fund like [defendant] will under the proposed settlement here"); *Hart*, 2020 WL 5645984, at *7–8 (explaining that *Masters* "focused on the 'benefit achieved for class members'"

---

      [7] This amount is not the same as, and could be less than, the total funds made available to the Class under the Settlement, since it is impossible to know how many claims could be made and the amount of the recovery for each claim, which would be based on whether or not the Class Member has proof of purchase.

SPA-24

and that "any benefit from funds reverted back or never tendered by defendants are purely hypothetical" and "provide no benefit to the class"); *Bodon*, 2015 WL 3889577, at *5 ("Because the class members in *Masters* . . . would receive the benefit of the entire fund, plaintiffs' counsel were entitled to a percentage of the whole recovery.  The Second Circuit's award of a percentage of the entire recovery in *Masters* does not, however, mean that plaintiffs' counsel are entitled to a percentage of a *hypothetical* recovery." (emphasis in original)).  *But see Zink v. First Niagara Bank, N.A.*, No. 13-CV-1076 (JJM), 2016 WL 7473278, at *8 (W.D.N.Y. Dec. 29, 2016) (holding that even if funds revert to the defendant, they still provide an indirect benefit to the class and thus should be included in fee calculations).

The Court agrees with Objector because there is a huge disparity between the benefits that will actually be achieved for Class Members and the amount of funds that will revert to Defendant.  Based on Class Counsel's most recently provided figures, the total value of the actual monetary benefits to the Class is $993,958.70.  (Tr. 8:25–9:1.)  Because any unpaid funds, which amount to approximately $19 million, would revert to Defendant, about 95% of the purported $20 million benefit is "purely hypothetical."  *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *34.  Given the stark "difference between the theoretical maximum benefit given to Plaintiffs and the actual claimed benefits," "[t]he theoretical benefit dwarfs any real benefit the class receives."  *Hart*, 2020 WL 5645984, at *8.  Accordingly, unclaimed funds should not be used when assessing the fee percentage.  This is especially true in light of *Moses*, where the Second Circuit emphasized that "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award."  *Moses*, 79 F.4th at 244 (quoting 2018 Advisory Note).

b.    Percentage of the Fund in the Instant Case

Here, the actual monetary benefits that the Class will receive from Defendant is $993,958.70; Class Counsel request $3,961,668.77 in attorneys' fees and $138,331.23 in litigation expenses; and named Plaintiffs request an additional $15,000 of incentive awards. As such, under the percentage-of-the-fund method, the total value of the Settlement is $5,108,958.70, compared to $20 million, the total amount of funds made available under the Settlement. *See, e.g.*, *Hart*, 2020 WL 5645984, at *8 (including actual class payments, attorneys' fees, costs, and expenses, and incentive awards in the total benefit given to the class to calculate the denominator in a claims-based settlement). Accordingly, the requested fee award is approximately 77.5% of the Settlement's total value $\left(\frac{\$3,961,668.77}{\$993,958.70 + \$3,961,668.77 + \$138,331.23 + \$15,000} = 77.5\%\right)$. The Court finds that the award is unreasonable under the circumstances.

Objector argues that "attorneys' fees should be reduced to the 25% benchmark of the actual benefit to the class." (Objector's Br., Dkt. 446, at 1.) An award of 25%, or even 33.3%, *see Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405 (CM) & 14-CV-8714 (CM), 2015 WL 10847814, at *16 & n.11 (S.D.N.Y. Sept. 9, 2015) (collecting cases where courts granted fee awards of approximately 30–33.3% of the total value of the settlement), would not be reasonable here. The Court finds such an award "would not give due credit for [Class Counsel's] efforts or the results achieved" in this case. *Hart*, 2020 WL 5645984, at *9. As discussed, the Settlement in this matter was achieved after eight years of intensive litigation, which entailed substantial discovery, motion practice, and two appeals to the Second Circuit. (*See* Serra Decl. II ¶¶ 6–32, Dkt. 444, at 3–15.) The Court further observes that such a low "award may disincentivize some plaintiffs' attorneys" in pursuing cases like this one in the future. *Hart*, 2020 WL 5645984, at *9. Thus, "the percentage of the fund does not appear to be a useful metric" in these circumstances.

25

*Id.* Rather, "[d]ue to the atypical structure of the [S]ettlement, lodestar is a more accurate measure of attorneys' fees," and should be applied here. *Id.*

### 2. Lodestar Analysis

Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47 (citing *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)).

#### a. Reasonable Hourly Rates

"A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" *McLaughlin*, 2018 WL 3642627, at *16 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). To determine reasonable hourly rates for the legal services performed, courts typically take into account several factors, such as "the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney." *Bodon*, 2015 WL 3889577, at *7 (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190). "In assessing the hourly rate, courts consider rates awarded in the district in which the reviewing court sits, pursuant to what is known as the 'forum rule.'" *Id.* (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009)).

Here, Class Counsel request a reduced lodestar of $3,961,668.77[8] based on 5,662.88 hours of work. (Pls.' Settlement Br., Dkt. 443, at 2, 19; Serra Decl. I, Ex. A, Dkt. 445, at ECF 8.) In support of their request for attorneys' fees, Class Counsel initially submitted a summary chart of

---

[8] In this case, Class Counsel calculated a lodestar of $4,269,331.50 (*see* Serra Decl. I, Ex. A, Dkt. 445, at ECF 8), but seek only $3,961,668.77 in attorneys' fees, which amounts to a negative lodestar multiplier of 0.93 (Pls.' Settlement Br., Dkt. 443, at 20).

their billing rates and hours expended, along with the declaration of Attorney Vincent M. Serra. (*See* Serra Decl. I, Ex. A., Dkt. 445, at ECF 8.)  The summary chart shows the hours expended by many individuals, including twelve partners, ten associates, one of counsel, two staff attorneys, one investigator, two litigation support personnel, one summer associate, and unspecified numbers of paralegals and document clerks, as well as the various rates charged.  (*Id.*)  However, this summary chart provides virtually no information about the nature of the work performed in connection with the hours for which compensation is sought.  At the Court's request, Class Counsel submitted for the Court's *in camera* review their contemporaneous billing records.  (*See* 9/19/2023 Minute Entry; Dkt. 473.)  These records show that Class Counsel based their calculation on the timekeepers' *current* hourly billing rates, rather than blended historical rates, "i.e., the hourly rates reflective of the rate at the time the work was performed," even though their billings spanned more than eight years preceding the fee petition.  *In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6888488, at *3 (E.D.N.Y. Dec. 16, 2019) [hereinafter "*In re Payment Card II*"].

The Court finds Class Counsel's use of current hourly rates in calculating attorneys' fees problematic because this "may have overstated [the lodestar calculation] given the lengthy duration of this case and the likelihood that the [F]irm's rates increased over the years."  *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK), 2021 WL 2453972, at *1 (S.D.N.Y. June 15, 2021).  In addressing the Court's concerns regarding the use of current rates, Class Counsel argue that "using current rates is a practice that's well accepted in the Circuit," reasoning that they have represented Plaintiffs since the beginning of this case without compensation and that allowing such rates is "justified to compensate for the delayed payment." (Tr. 20:24–25; 21:4–6; *see also* Pls.' Settlement Br., Dkt. 443, at 19 ("Class Counsel's efforts thus

far have been uncompensated and the fees have been entirely contingent upon the result achieved.").)

While courts may have discretion to apply current rates in awarding attorneys' fees, they must consider "all case-specific variables" and "all pertinent factors," including the experience of the attorney, in setting a reasonable hourly rate. *Lilly v. City of N.Y.*, 934 F.3d 222, 230 (2d Cir. 2019); *see, e.g.*, *Jara v. P.N. Fin., Inc.*, No. 10-CV-6274, 2014 WL 4388515, at *6 (S.D.N.Y. Sept. 4, 2014) ("In determining reasonable hourly rates, a court should first examine the attorneys' experience."); *Chavez v. MCS Claim Servs., Inc.*, No. 15-CV-3160 (JMA) (AKT), 2016 WL 1171586, at *4 (E.D.N.Y. Mar. 23, 2016) ("[T]he Court must determine a reasonable hourly rate for the legal services performed, using factors such as the labor and skill required, the difficulty of the questions, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney." (internal quotation marks and citation omitted)).

Here, as an example, Attorney Serra, who billed the highest number of hours in this action (*see* Serra Decl. I, Ex. A, Dkt. 445, at ECF 8), started working on this case when he was an associate with the Firm in 2015 and did not become a partner until 2021. (Tr. 20:11–21.) Thus, "[t]he vast majority of [Attorney Serra's] hours [expended in this case] were billed as an associate." (Tr. 20:15–16.) Despite now being a partner at Robbins Geller, Attorney Serra did not have the commensurate experience for at least six of the years he worked on this case as an associate, so as to "warrant[] the award of an hourly fee that courts in this District deem appropriate for partners, *i.e.*, attorneys with significantly more relevant experience than that of [Attorney Serra]." *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *5 (E.D.N.Y. Jan. 29, 2020). Therefore, the Court does not find it reasonable to apply Attorney Serra's current

28

hourly rate to all of the time he expended in this action given that the majority of his work on this case was done as an associate.

Indeed, the Court also notes that Class Counsel used blended historic hourly rates in their attorneys' fees requests in other class action lawsuits litigated in this Circuit, either at the court's direction or in the first instance. *See, e.g.*, *City of Westland Police*, 2021 WL 2453972, at *1 ("At the Court's request, counsel provided a restated lodestar based on blended historic hourly rates[.]"); *In re Payment Card II*, 2019 WL 6888488, at *3 (noting that class counsel calculated a lodestar of $204 million "based on historical rates" for their attorneys' fees request).[9]

Even if it were appropriate to apply attorneys' current hourly rates—*e.g.*, to account for delayed payment in prolonged litigation—the Court is not persuaded that those rates are reasonable on their face, as they are not in line with the prevailing rates in the Eastern District of New York. "Under the 'forum rule,' this Court uses the prevailing hourly rate in the Eastern District of New York in calculating the reasonable hourly rate." *Chrysafis v. Marks*, No. 21-CV-2516 (GRB) (AYS), 2023 WL 6158537, at *4 (E.D.N.Y. Sept. 21, 2023). "[I]n complex matters, courts [in more recent cases] have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *7 (E.D.N.Y. Nov. 21, 2023); *see also Aptive Env't, LLC v. Vill. of E. Rockaway, N.Y.*, No. 19-CV-3365 (DRH) (SIL), 2022 WL 5434178, at *5 (E.D.N.Y. July 8, 2022) (setting billing rates at $325 to $600 per hour for partners, $200 to $395 per hour for associates, and $125 to $240 per hour for paralegals), *R&R adopted*,

---

[9] In *In re Payment Card II*, the court appointed Robbins Geller, along with the law firms of Robins Kaplan LLP and Berger & Montague P.C., to serve as class counsel. *In re Payment Card II*, 2019 WL 6888488, at *3. There, the law firms submitted a request for attorneys' fees using historic hourly rates. *Id.*

2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022); *Ctr. for Popular Democracy v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 16-CV-5829 (NGG) (VMS), 2021 WL 4452202, at *11 (E.D.N.Y. Sept. 29, 2021) (setting billing rates at $450 to $630 per hour for partners, $360 per hour for associates, $170 for law clerks, and $100 for paralegals).  Notably, "[t]he rates awarded in complex matters are higher than the typical 'prevailing rates for attorneys in the [Eastern District of New York], which are approximately $300 [to] $450 per hour for partners, $200 [to] $300 per hour for senior associates, and $100 [to] $200 per hour for junior associates.'"  *Alcon Vision*, 2023 WL 8072507, at *7 (citation omitted).  Furthermore, "courts in the Second Circuit have found that the hourly rates for litigation support personnel should be comparable to the hourly rates for paralegals."  *City of Westland Police*, 2021 WL 2453972, at *3.

Here, the Court finds that Class Counsel's current hourly rates—$800 to $1,350 per hour for partners, more than $500 per hour for some associates, $265 to $375 per hour for paralegals, and $300 to $400 per hour for litigation support personnel (*see* Serra Decl. I, Ex. A, Dkt. 445, at ECF 8)—exceed the prevailing hourly rates, including those approved in complex litigation. Specifically, seven of the twelve partners for whom attorneys' fees are sought have hourly rates in excess of $1,000, with two attorneys' rates exceeding $1,300 per hour.  (*Id.* (billing records for Attorneys Paul J. Geller and Samuel H. Rudman).)  Furthermore, Class Counsel seek $895 per hour for Attorney Mark S. Reich for a total of 1,289.55 hours of work, the second highest number of hours billed for this case, but provide no information about his background and experience.[10] (*See generally* Serra Decl. I, Exs. A, D, G, Dkt. 445.)

---

[10] While the Court notes that Attorney Reich is no longer employed by Robbins Geller (*see* Serra Decl. I ¶ 4, Dkt. 445, at ECF 3; Serra Decl. I, Ex. G, Dkt. 445; *Kurtz v. Kimberly-Clark Co.*, No. 14-CV-1142 (PKC) (RER)), information about Attorney Reich's background and experience at the time he was working on this matter for the Firm is still relevant to the Court's evaluation of the hourly rate at which his services are being billed in this case.

SPA-31

Therefore, the Court finds that the unjustifiably inflated hourly rates being claimed by Class Counsel warrant a reduction in the attorneys' fees to be awarded in this case.

b.  Reasonable Hours

In determining whether the number of hours worked is reasonable, "a district court should 'examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.'" *Chaparro v. John Varvatos Enters., Inc.*, No. 21-446-CV, 2021 WL 5121140, at *2 (2d Cir. Nov. 4, 2021) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). "Where, as is the case here, 'the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent.'" *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) (citation omitted). "In dealing with hours that are 'excessive, redundant, or otherwise unnecessary, . . . the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Chaparro*, 2021 WL 5121140, at *2 (citation omitted).

Here, Class Counsel's fee application raises several issues with respect to the number of hours worked. First, the allocation of time is heavily weighted toward partners. Twelve of the twenty-five attorneys who billed were partners, and they billed more than 68% of the hours.[11]  (*See* Serra Decl. I, Ex. A, Dkt. 445, at ECF 8.)  Furthermore, Class Counsel billed for work performed by a summer associate, which typically is not done. *See Okla. Firefighters Pension & Ret. Sys. v.*

---

[11] Even treating Attorney Serra's hours as if he were an associate and not a partner, the hours billed by the remaining eleven partners still account for nearly 40% of the total hours billed in this matter.

*Lexmark Int'l, Inc.*, No. 17-CV-5543, 2021 WL 76328, at *5 (S.D.N.Y. Jan. 7, 2021) (noting that the billing of a summer associate's time was "a practice this Court has never seen").

Moreover, Class Counsel's billing records contain vague entries that "lack sufficient specificity to enable a court to assess what tasks were completed." *Alcon Vision*, 2023 WL 8072507, at *4 (internal quotation marks and citation omitted). For instance, many of Class Counsel's claimed hours are for vaguely described tasks, such as "factual and legal research," "review research and case law," "draft complaint," "research/draft opposition brief," "deposition prep," and "work on settlement." (*See generally* Dkt. 473.) Such entries "do not allow a court to assess what legal issues, in particular, the attorneys were researching, or which sections of a legal brief they were drafting, and whether the time spent was excessive or duplicative." *Alcon Vision*, 2023 WL 8072507, at *4 (internal quotation marks and citations omitted); *see also Mawere v. Citco Fund Servs., (USA) Inc.*, No. 9-CV-1342 (BSJ) (DF), 2011 WL 6779319, at *8 (S.D.N.Y. Sept. 16, 2011) (finding vague time entries that state "research" or "read cases," or refer vaguely to legal research regarding a motion, making it impossible to determine whether the hours were excessive); *Mary Jo C. v. Dinapoli*, No. 9-CV-5635 (SJF) (ARL), 2014 WL 7334863, at *10 (E.D.N.Y. Dec. 18, 2014) (finding time entries such as "work[ing] on memo of law in opposition to defendants' motions to dismiss" vague); *Calvo v. City of N.Y.*, No. 14-CV-7246 (VEC), 2017 WL 4119280, at *7 (S.D.N.Y. Sept. 15, 2017) (finding time entries such as "[d]rafting & legal research on motion for summary judgment" vague). Such an indefinite showing cannot suffice to support the reasonableness of the hours expended on these tasks.

Finally, Class Counsel often engaged in block billing by combining several tasks into a single entry. "The practice of block billing, although not forbidden, makes it 'difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual

services or tasks provided . . . .'" *Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d at 432 (citation omitted). For example, Attorney Lauren Karalis spent 4.25 hours on the following tasks: "Reviewed defendant[']s documents. Team meeting regarding discovery and discuss documents found so far." (Dkt. 473, at 48.) Similarly, Attorney Edward Kroub spent 1.13 hours on the following tasks: "Collected materials for preparation of witness. Reviewed preparation outline with partner. Created preparation outline." (*Id.* at 30.) Other examples of block billing abound, making it difficult for the Court to assess the reasonableness of many of Class Counsel's time entries.

### c.   Fees To Be Awarded

A court has discretion to impose an across-the-board fee reduction "where counsel relies on vague/excessive entries or block billing practices which make it difficult for a court to assess reasonableness." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 619 (E.D.N.Y. 2017); *see also Costa v. Sears Home Improvement Prods., Inc.*, 212 F. Supp. 3d 412, 426 (W.D.N.Y. 2016) (applying an across-the-board reduction to the fee application of 40% due to unreasonable and vague billed hours).

In light of the considerations set forth above—including the high partner, associate, and other legal personnel billing rates, the partner-heavy billing, the vagueness of the timekeeping, the block billing, and the billing of a summer associate—the Court exercises its informed discretion to impose an across-the-board reduction of 20% to Class Counsel's fee application. As a result, the Court finds that the reasonable attorneys' fees incurred by Class Counsel on behalf of Plaintiffs are $3,169,335.02.

### 3.   Reasonableness Under the *Goldberger* Factors

In applying either the lodestar or the percentage-of-the-fund method to calculate attorneys' fees, "[t]he final step in this analysis is to determine whether the fee award calculated above is

33

reasonable under the *Goldberger* factors." *McLaughlin*, 2018 WL 3642627, at *20. These six factors are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (internal quotation marks and citation omitted). For the following reasons, the Court finds that an award of $3,169,335.02 is reasonable under the *Goldberger* factors, which largely overlap with the *Grinnell* factors.

### a. The Time and Labor Expended by Counsel

As set forth in Class Counsel's declarations, Class Counsel expended significant time, resources, and effort in successfully representing the Class in the instant case. (*See* Serra Decl. II ¶¶ 6–32, Dkt. 444, at 3–15.) Over the course of the lifespan of this case, Class Counsel engaged in intensive litigation, entailing substantial discovery, motion practice, two appeals to the Second Circuit, class certification, and settlement negotiations. (*See id.*); *see also Hallmark v. Cohen & Slamowitz, LLP*, 378 F. Supp. 3d 222, 232 (W.D.N.Y. 2019) (holding that the first *Goldberger* factor supported the attorneys' fee award because class counsel "engaged in several years of discovery and related motion practice, including various conferences and court appearances, and participated in other court proceedings, such as mediation sessions, settlement negotiations, and motion hearings"). "The scope of work[] performed by Class Counsel was necessary and reasonable for complex class actions of this type." *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *36. Accordingly, this factor favors the attorneys' fee award determined by the Court.

### b. The Magnitude and Complexities of the Litigation

"In evaluating the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors to be considered[.]" *Hallmark*, 378 F. Supp. 3d at 232 (internal quotation marks and citation omitted). As discussed above, class actions themselves are considered

SPA-35

inherently complex.  The instant action spanned over eight years of contentious litigation, involved a substantial number of class members, and necessitated extensive discovery, third-party subpoenas, class certification, appeals to the Second Circuit, oral arguments, and evidentiary hearings.  (*See* Serra Decl. II ¶¶ 6–32, Dkt. 444, at 3–15.)  Thus, the second *Goldberger* factor weighs in favor of approving the revised award.

### c.   The Risk of the Litigation

"The most important *Goldberger* factor is often the case's risk."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440–41 (E.D.N.Y. 2014) (citations omitted).  As discussed in the Court's June 12, 2023 Memorandum & Order, the Court recognizes that Plaintiffs would encounter substantial litigation risks at trial in seeking to establish liability and damages, as well as in maintaining the class action through trial, particularly because of the factual and legal complexities of this action.  (*See* Mem. & Order, Dkt. 471, at 25–26.)  In light of Class Counsel's "willingness to endure for many years the risk that their extraordinary efforts would go uncompensated," *id.* at 441, the third *Goldberger* factor supports the fee award determined by the Court.

### d.   The Quality of the Representation

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation."  *Hallmark*, 378 F. Supp. 3d at 233 (internal quotation marks and citations omitted).  "Considering the favorable result reached on behalf of the Class, it is obvious that the members of the Class benefited from [C]ounsel proficient in consumer protection litigation," while avoiding the risk and uncertainty of trial and continued litigation.  *Id.* at 234.  Also, "[t]hat Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage, is a

testament to the skill displayed by Class Counsel." *Hesse*, 2022 U.S. Dist. LEXIS 7264, at \*39.
Accordingly, the fourth *Goldberger* factor supports the awarded attorneys' fees.

e.   The Requested Fee in Relation to the Settlement

"To avoid routine windfalls where the recovered fund runs into the multi-millions, courts
typically decrease the percentage of the fee as the size of the fund increases." *Hart*, 2020 WL
5645984, at \*11 (internal quotation marks and citation omitted).  As discussed, Class Counsel's
requested attorneys' fees represent approximately 77.5% of the total value of the Settlement (based
on the benefits actually obtained for the Class), which the Court has found excessive. *See supra*
Discussion Section II.A.1.b.  While this factor weighs against Class Counsel's requested award,
the excessiveness of the fee request has been addressed by the 20% reduction of the fees to be
awarded, *i.e.*, from $3,961,668.77 to $3,169,335.02.   Thus, the Court finds that the adjusted
attorneys' fee award is appropriate and does not constitute a windfall to Class Counsel.

f.   Public Policy Considerations

Lastly, "when determining whether a fee award is reasonable, courts consider the social
and economic value of the class action, and the need to encourage experienced and able counsel
to undertake such litigation." *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906 (HBP), 2015 WL
4006896, at \*12 (S.D.N.Y. July 1, 2015) (internal quotation marks and brackets omitted).  Here,
the Court notes that the public's interest in regulating the "flushable wipes" market is furthered by
the approval of the adjusted attorneys' fee award.  Nevertheless, "these public policies must be
balanced against the need to award fees 'with an eye to moderation,' particularly when the fee
application is unopposed and there is little incentive for plaintiffs to object when the impact on
their individual potential recovery of any increase or decrease in the fee award is incremental[,]"
or, as here, non-existent. *Id.* at \*12 (quoting *Goldberger*, 209 F.3d at 52–53).  Thus, the Court
finds that the across-the-board 20% reduction to Class Counsel's fee request is reasonable in light

36

of the need to incentivize similarly experienced attorneys to take on the risk of litigation to police valuable policy goals and the fact that Plaintiffs were unlikely to pursue their claims individually due to the burden of litigation, balanced against the need for moderation given Plaintiffs' lack of incentive to oppose Class Counsel's fee application.  Accordingly, this factor weighs in favor of approving the attorneys' fee award.

Given that all of the *Goldberger* factors weigh in favor of approving the adjusted attorneys' fee award, the Court finds that the award is reasonable.

*      *      *

In sum, the Court finds that the lodestar method and the *Goldberger* factors both support awarding Class Counsel attorneys' fees of $3,169,335.02.

**B.      Litigation Expenses**

Class Counsel also request reimbursement for litigation expenses and charges in the amount of $138,331.23.  (Pl.'s Settlement Br., Dkt. 443, at 2, 19.)  To support their request, Class Counsel have submitted declarations documenting their incurred expenses.  (*See* Serra Decl. I, Exs. B–F, Dkt. 445.)  The Court finds that these expenses, primarily attributed to expert and consultant fees, were typical and necessary for Class Counsel to successfully prosecute this case, and thus should be reimbursed to Class Counsel.  *See, e.g.*, *Yang v. Focus Media Holding Ltd.*, No. 11-CV-9051(CM) (GWG), 2014 WL 4401280, at *19 (S.D.N.Y. Sept. 4, 2014) (approving mediator fees, expert fees, electronic research, photocopying, postage, meals, and court filing fees and finding that these are the type of expenses that law firms typically bill to their clients).

**C.      Class Representative Incentive Awards**

As discussed above, the Court finds that named Plaintiffs' requested incentive awards are reasonable in light of the circumstances of this case, especially considering its protracted history.

37

SPA-38

*See supra* Discussion Section I.C.2.  Based on the factors noted in *Moses* and the amended Rule 23(e), the Court finds that incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively, are appropriate.

**CONCLUSION**

For the reasons stated above, the Court finds that the Settlement Agreement in this matter satisfies all four factors under Rule 23(e)(2) and the *Grinnell* factors, and thus is substantively fair, reasonable, and adequate.  The Court hereby affirms its prior decision finally approving the Settlement Agreement and certifying the Settlement Class.  In addition, the Court approves and awards: (1) attorneys' fees in the amount of $3,169,335.02, (2) litigation expenses and charges in the amount of $138,331.23, and (3) class representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively.  These payments shall be paid by Defendant to Plaintiffs and Class Counsel in accordance with the terms of the Settlement Agreement.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 17, 2024
       Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
D. JOSEPH KURTZ, Individually and on Behalf
of All Others Similarly Situated,                                              JUDGMENT

                Plaintiffs,
        v.                                                                             14-CV-1142 (PKC) (RML)

KIMBERLY-CLARK CORPORATION and
COSTCO WHOLESALE CORPORATION,

                Defendants.
------------------------------------------------------------X
GLADYS HONIGMAN; and D. JOSEPH KURTZ,
Individually and on Behalf of All Others
Similarly Situated,                                                                 15-CV-2910 (PKC) (RML)

                Plaintiffs,
        v.

KIMBERLY-CLARK CORPORATION,

                Defendant.
------------------------------------------------------------X

An Amended Memorandum and Order of the Honorable Pamela K. Chen, United States

District Judge, having been filed on January 17, 2024, affirming the Court's prior decision finally

approving the Settlement Agreement and certifying the Settlement Class; approving and

awarding: (1) attorneys' fees in the amount of $3,169,335.02, (2) litigation expenses and charges

in the amount of $138,331.23, and (3) class representative incentive awards of $10,000 and

$5,000 to Kurtz and Honigman, respectively; and an Order having been filed on March 15, 2024,

entering the following: (1) partial final judgment in *Kurtz v. Kimberly-Clark Corp., et al.*, 14-cv-

1142 (PKC) (RML) as to Defendant Kimberly-Clark Corporation, because the Court finds that

there is no just reason for delay in entering final judgment solely as to Kimberly-Clark

Corporation pursuant to Rule 54(b) of the Federal Rules of Civil Procedure; and (2) final

judgment in *Honigman v. Kimberly-Clark Corp.*, 15-cv-2910 (PKC) (RML); it is

SPA-40

ORDERED and ADJUDGED that the Settlement Agreement is approved; that the Settlement Class is certified; that plaintiff is awarded (1) attorneys' fees in the amount of $3,169,335.02, (2) litigation expenses and charges in the amount of $138,331.23, and (3) class representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively; that partial final judgment is hereby entered in *Kurtz v. Kimberly-Clark Corp., et al.*, 14-cv-1142 (PKC) (RML) as to Defendant Kimberly-Clark Corporation; and that final judgment is hereby entered in *Honigman v. Kimberly-Clark Corp.,* 15-cv-2910 (PKC) (RML).

Dated: Brooklyn, New York
      March 15, 2024

Brenna B. Mahoney
Clerk of Court

By:   */s/Jalitza Poveda*
      Deputy Clerk

SPA-41

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
D. JOSEPH KURTZ, Individually and on Behalf                                                            
of All Others Similarly Situated,                                                JUDGMENT

                       Plaintiffs,

           v.                                             14-CV-1142 (PKC) (RML)

KIMBERLY-CLARK CORPORATION and
COSTCO WHOLESALE CORPORATION,

                      Defendants.
-----------------------------------------------------------------X
GLADYS HONIGMAN; and D. JOSEPH KURTZ,
Individually and on Behalf of All Others
Similarly Situated,                                      15-CV-2910 (PKC) (RML)

                       Plaintiffs,
           v.

KIMBERLY-CLARK CORPORATION,

                      Defendant.
-----------------------------------------------------------------X

        An Amended Memorandum and Order of the Honorable Pamela K. Chen, United States

District Judge, having been filed on January 17, 2024, affirming the Court's prior decision finally

approving the Settlement Agreement and certifying the Settlement Class; approving and

awarding: (1) attorneys' fees in the amount of $3,169,335.02, (2) litigation expenses and charges

in the amount of $138,331.23, and (3) class representative incentive awards of $10,000 and

$5,000 to Kurtz and Honigman, respectively; and an Order having been filed on March 15, 2024,

entering the following: (1) partial final judgment in *Kurtz v. Kimberly-Clark Corp., et al.*, 14-cv-

1142 (PKC) (RML) as to Defendant Kimberly-Clark Corporation, because the Court finds that

there is no just reason for delay in entering final judgment solely as to Kimberly-Clark

Corporation pursuant to Rule 54(b) of the Federal Rules of Civil Procedure; and (2) final

judgment in *Honigman v. Kimberly-Clark Corp.,* 15-cv-2910 (PKC) (RML); it is

SPA-42

ORDERED and ADJUDGED that the Settlement Agreement is approved; that the

Settlement Class is certified; that plaintiff is awarded (1) attorneys' fees in the amount of

$3,169,335.02, (2) litigation expenses and charges in the amount of $138,331.23, and (3) class

representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively; that

partial final judgment is hereby entered in *Kurtz v. Kimberly-Clark Corp., et al*., 14-cv-1142

(PKC) (RML) as to Defendant Kimberly-Clark Corporation; and that final judgment is hereby

entered in *Honigman v. Kimberly-Clark Corp.,* 15-cv-2910 (PKC) (RML).

Dated: Brooklyn, New York　　　　　　　　　Brenna B. Mahoney
　　　　March 15, 2024　　　　　　　　　　　Clerk of Court

　　　　　　　　　　　　　　　By:　　*/s/Jalitza Poveda*
　　　　　　　　　　　　　　　　　　　Deputy Clerk

SPA-43

**Statutes and Rules**

**Federal Rule of Civil Procedure 23. Class Actions.**

….

(e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

….

(2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(C) the relief provided for the class is adequate, taking into account:

….

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); ….

….

(h) Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement….