# No. 24-425(L); 24-454

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

D. JOSEPH KURTZ and GLADYS HONIGMAN, Individually and on Behalf of
All Others Similarly Situated,
*Plaintiffs – Appellees,*

vs.

THEODORE H. FRANK,
*Objector – Appellant,*

vs.

KIMBERLY-CLARK CORPORATION,
*Defendant – Appellee.*

Appeal from the United States District Court
for the Eastern District of New York, Nos. 1:14-cv-1142, 2:15-cv-02910

## PLAINTIFFS-APPELLEES' ANSWER BRIEF

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS WILENS
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA
FRANCIS P. KARAM
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Counsel for Plaintiffs-Appellees

**CORPORATE DISCLOSURE STATEMENT**

Plaintiffs-Appellees D. Joseph Kurtz and Gladys Honigman state that they are individuals and not corporations.

# TABLE OF CONTENTS

**Page**

RECORD DEFINITIONS AND INSTRUCTIONS ............................................. viii

I.    INTRODUCTION .................................................................................1

II.   STATEMENT OF THE CASE ...........................................................5

    A.    Summary of the Facts .............................................................5

    B.    Procedural History ..................................................................6

          1.    This Action Presents an Extensive Procedural History, Marked by Numerous Class Certification Proceedings, Unique "Science Day" Presentations, and Two Trips to the Second Circuit ..................................................6

          2.    After Years of Urging by the District Court, the Parties Agree to Settle the Actions .......................................14

          3.    The District Court Approves the Settlement.............................17

III.  STANDARD OF REVIEW .............................................................24

IV.  SUMMARY OF ARGUMENT .......................................................24

V.    ARGUMENT .....................................................................................28

    A.    The Robust Record Reflects that the District Court Satisfied its Fiduciary Obligations to the Class by Scrutinizing the Fairness of the Settlement .......................................................28

    B.    Frank Disregards Second Circuit Precedent on Class-Action Settlement Approval and Mischaracterizes Rule 23(e)(2)(C) Standards ...............................................................31

          1.    Rule 23(e)(2)(C)(ii) does not address the allocation of funds between class and counsel...............................38

**Page**

2.      Rule 23(e)(2)(C)(iii)'s attorney-fee analysis does not render the settlement unfair ......................................................43

C.      Even Though Frank Abandoned His Challenge to the Fees Awarded Under Rule 23(h), the District Court Properly Exercised Its Discretion in Awarding Fees ........................................50

D.      The Court Should Disregard *Amici Curiae* ........................................56

VI.     CONCLUSION ................................................................................58

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ...........................................................30

*Allen v. Taylor*,
    795 F. App'x 79 (2d Cir. 2020) .........................................................55

*Belfiore v. Proctor & Gamble Co.*,
    14-cv-4090 (E.D.N.Y.) ...............................................................*passim*

*Blessing v. Sirius XM Radio Inc.*,
    507 F. App'x 1 (2d Cir. 2012) .....................................................47, 49

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ....................................................30, 57

*Casey v. Citibank, N.A.*,
    2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014).................................42

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013) .......................................................29, 50

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ......................................................*passim*

*Commissioners of Public Works of the City of Charleston
    v. Costco Wholesale Corp.*,
    Case No. 2:21-cv-00042-RMG (D.S.C.) ..........................................55

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .................................................24, 31, 44

*Fager v. CenturyLink Commc'ns, LLC*,
    854 F.3d 1167 (10th Cir. 2016) .......................................................36

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..................................57

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ............................................................29, 33, 49, 54

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ......................................................................*passim*

*In re Apple Inc. Device Performance Litig.*,
  50 F.4th 769 (9th Cir. 2022) ...............................................................................56

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ...............................................................37, 44, 54

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..............................................................................30

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) .........................................................................30, 53

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
  21 F.4th 1102 (9th Cir. 2021) .............................................................................56

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  872 F.3d 1094 (10th Cir. 2017) ...............................................................30, 31, 53

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ..........................................................................39

*In re Philip Morris Int'l Inc. Sec. Litig.*,
  89 F.4th 408 (2d Cir. 2023) ...............................................................................51

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs.
   & Prods. Liab. Litig.*,
  997 F.3d 1077 (10th Cir. 2021) ...............................................................38, 49, 57

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
  867 F.3d 791 (7th Cir. 2017) .........................................................................43, 53

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
  2019 WL 3773737 (N.D. Ohio Aug. 12, 2019).................................................37

*In re Tremont Sec. L., State L. & Ins. Litig.*,
  699 F. App'x 8 (2d Cir. 2017) ............................................................42

*In re Wawa, Inc. Data Sec. Litig.*,
  85 F.4th 712 (3d Cir. 2023) ...............................................................56

*Jones v. Monsanto Co.*,
  38 F.4th 693 (8th Cir. 2022) .........................................................37, 56

*Kassim v. City of Schenectady*,
  415 F.3d 246 (2d Cir. 2005) ..............................................................52

*Kurtz v. Costco Wholesale Corp.*,
  768 F. App'x 39 (2d Cir. 2019) ..........................................................11

*Kurtz v. Costco Wholesale Corp.*,
  818 F. App'x 57 (2d Cir. 2020) ..........................................................13

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ..............................................................52

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995) ..............................................................45

*Melito v. Experian Mktg. Sols., Inc.*,
  923 F.3d 85 (2d Cir. 2019) ................................................................30

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ........................................................*passim*

*Pearlman v. Cablevision Sys. Corp.*,
  2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019) ..................................47

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) .........................................................33, 44

*Pettit v. Procter & Gamble Co.*,
  No. 3:15-cv-2150-RS (N.D. Cal.) ......................................................46

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ...................................................................44

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................33

*Torcivia v. Suffolk Cnty., N.Y.*,
    17 F.4th 342 (2d Cir. 2021) .....................................................................36

*Torres v. Gristede's Operating Corp.*,
    519 F. App'x 1 (2d Cir. 2013) .................................................................55

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ....................................................................58

*Villa v. Highbury Concrete Inc.*,
    2022 WL 19073649 (E.D.N.Y. Nov. 25, 2022) ......................................41

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23(b)(2) ...........................................................................................13
    Rule 23(b)(3) ...................................................................11, 12, 13, 19
    Rule 23(e) ...........................................................................................*passim*
    Rule 23(e)(2) ......................................................................................*passim*
    Rule 23(e)(2)(C) .........................................................31, 34, 35, 36
    Rule 23(e)(2)(C)(i) ...............................................................................35
    Rule 23(e)(2)(C)(ii) ........................................................................*passim*
    Rule 23(e)(2)(C)(iii) .......................................................................*passim*
    Rule 23(e)(2)(D) ....................................................................................22
    Rule 23(f) ................................................................................................11
    Rule 23(h) ...........................................................................................*passim*
    Rule 54(b) ...............................................................................................24

## RECORD DEFINITIONS AND INSTRUCTIONS

"FOB __" refers to the Opening Brief of Appellant Theodore H. Frank

"SPA-__" refers to the Special Appendix

"A-__" refers to the Joint Appendix

"ECF __" refers to the Electronic Case Filing number for documents filed on the district court docket in this action

"2d Cir. ECF __" refers to the Electronic Case Filing number for documents filed on the Second Circuit docket in this action

"AB __" refers to the Brief of Iowa, Alabama, Arkansas, Indiana, Kansas, Louisiana, Mississippi, Montana, Ohio, South Carolina, Tennessee, Utah, and Virginia Attorneys General as Amici Curiae in Support of Objector-Appellant and Reversal

Unless otherwise noted, internal citations and footnotes are omitted, and emphasis is added

## I.   INTRODUCTION

Following more than eight years of active litigation—including extensive class-certification proceedings that generated two trips to the Second Circuit—plaintiffs D. Joseph Kurtz ("Kurtz") and Gladys Honigman ("Honigman") (collectively, "Plaintiffs") and defendant Kimberly-Clark Corporation ("Kimberly-Clark") agreed to settle this class action involving claims that Kimberly-Clark mislabeled its moist-wipe products as "flushable." Indeed, lengthy and sometimes difficult negotiations, aided in part by an experienced mediator, produced a claims-made settlement that attempted to approximate the "price premium" damages suffered by class members, providing two tiers of cash benefits subject to a $20 million cap on total payments. Kimberly-Clark separately agreed to pay Plaintiffs' attorneys' fees and expenses up to $4.1 million for the work performed throughout this long-running action.

Enter Theodore H. Frank ("Frank"), a frequent settlement objector and class-action critic. Relying on generalized assertions about perceived abuses in class-action practice—rather than on what actually transpired in this case—Frank objected to a purportedly disproportionate allocation of the settlement benefits between requested counsel fees ($3.9 million lodestar) and the aggregate pay-out to class members after completion of the claims process (nearly $1 million), suggesting that

- 1 -

this result signaled collusion by the parties and self-interested misconduct by class counsel. Frank implored the district court to scrutinize the fairness of the settlement under Federal Rule of Civil Procedure 23(e) and the reasonableness of the fee request under Federal Rule of Civil Procedure 23(h).

And the district court did just that. After briefs, supplements, and three hearings, the district court issued two orders that, collectively, approved the settlement as fair, awarded reasonable fees, and overruled Frank's objections. In the first order, the district court expressly rejected Frank's claims that the settlement was tainted by self-interest and then, applying standards established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) and Rule 23(e)(2), concluded that the settlement was procedurally and substantively fair. In the second order, the district court reaffirmed those rulings, finding that nothing in the recently issued *Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023) decision compelled a different result, and awarded reasonable attorneys' fees of nearly $3.2 million, a 20% reduction from Plaintiffs' lodestar request.

Despite the fulsome settlement proceedings and well-reasoned opinions, Frank argues on appeal that the district court abused its discretion in approving the settlement. In effect, Frank asks this Court to establish a categorical rule that, regardless of context or other case-specific factors, a court can never approve a

settlement where the attorneys' fees are larger than the total class-wide pay-out. In so doing, Frank largely hews to the same faulty strategy employed below, with one critical exception: while he maintains that the large fee dooms the settlement under Rule 23(e), Frank has abandoned his direct attack on that fee under Rule 23(h).

But for this gambit to work, Frank must demonstrate that the fee award adversely impacted the adequacy of the relief paid separately to class members. And that is where Frank's arguments collapse. Frank did not contend below (and does not assert now) that the cash settlement benefits offered to each class member—deemed a "substantial benefit" by the district court—were inadequate or otherwise failed to sufficiently approximate the "price premium" damages sought by Plaintiffs in this action. Frank offered no evidence on this issue, nor did he rebut the expert evidence submitted by the parties. In short, he has waived the fundamental adequacy challenge at the heart of his appeal.

Frank cannot escape this waiver by pointing to the aggregate class pay-out. This is a claims-made, not a common-fund, settlement, and the $1 million total to be dispersed to the class represents the outcome of the claims process, and resulted from numerous factors outside of class counsel's control. While that outcome may be relevant to the reasonableness of the fee award (an issue Frank has now abandoned), it has no bearing on the fairness of the offer made to class members under Rule 23(e),

- 3 -

especially where the district court confirmed that the fee award had no impact on the benefits provided in the settlement.

Put simply, Frank waived his challenge to the fee award under Rule 23(e), and abandoned his challenge to the fee award under Rule 23(h).

Other than that, Frank's jumbled appeal fails to break any new ground. He offers well-worn criticisms of class action settlements, but fails to grapple with the facts of this particular case and its protected procedural history. He ignores the *Grinnell* factors long utilized by this Court, and otherwise mischaracterizes the standards governing class-action settlement approval. And he fails to challenge other vital components of the settlement agreement, including the notice plan and the plan of allocation, which further undercuts his complaints about the fairness of the settlement.

Finally, although Frank abandoned his Rule 23(h) attacks, Plaintiffs maintain that the district court properly exercised its discretion in awarding fees of nearly $3.2 million under a lodestar calculation. The district court's reasoned analysis recognized that such fee was reasonable, given counsel's considerable efforts over the course of this lengthy litigation and the public policy incentivizing attorneys to pursue lower-value consumer claims where the litigation can be difficult and the outcome often uncertain. Driving those points home, the district court appropriately

concluded that the factors established by this Court in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)—further ignored by Frank—justified the fee award in this case.

Accordingly, because the district court properly exercised its discretion, this Court should affirm the orders approving the settlement as fair and awarding reasonable fees.

## II. STATEMENT OF THE CASE

### A. Summary of the Facts

Kimberly-Clark is a leading consumer products company that manufactures, markets, and sells numerous personal care products under several name brands. One of Kimberly-Clark's most significant product lines is a moist flushable wipe intended for bathroom use. Kimberly-Clark marketed these wipes as "flushable" based on claims that they can be flushed down toilets without causing harm to plumbing and sewer systems.

Plaintiffs, however, asserted that Kimberly-Clark's wipes were not truly "flushable" because they failed to disintegrate upon flushing in a manner similar to toilet paper, and thereby caused clogs and other plumbing-related problems. As a result, Plaintiffs maintained, *inter alia*, that the "flushable" misrepresentations on product packaging and elsewhere allowed Kimberly-Clark to extract a "price premium" from consumers who paid extra for wipes that failed to satisfy any

recognized standards of flushability. Through this action, Plaintiffs sought to recover that "price premium" based on the difference in value between a "flushable" and non-flushable wipe.

## B. Procedural History

### 1. This Action Presents an Extensive Procedural History, Marked by Numerous Class Certification Proceedings, Unique "Science Day" Presentations, and Two Trips to the Second Circuit

In February 2014, Kurtz filed a complaint in the Eastern District of New York against Kimberly-Clark alleging violations of New York and New Jersey consumer-protection statutes, and other common-law claims, for misrepresenting that its wipes were "flushable." A-84.[1] Kurtz sought to represent consumers who purchased Kimberly-Clark "flushable" wipes in nationwide, New York, and New Jersey classes. A-120. The case was assigned to Senior U.S. District Judge Jack Weinstein. A-5.

At or around the same time, consumers filed similar cases across the country against Kimberly-Clark and other manufacturers of "flushable" wipes. One of those cases filed in the Eastern District of New York, *Belfiore v. Proctor & Gamble Co.*,

---

[1]   In that complaint, Kurtz brought similar claims against Costco Wholesale Corp. for wipes marketed and sold as "flushable." Those claims have been settled independently and await final approval by the district court.

14-cv-4090 (E.D.N.Y. filed July 1, 2014), was also assigned to Judge Weinstein. Given the common issues of fact and law raised, Judge Weinstein frequently held joint proceedings in *Kurtz* and *Belfiore*.

Kimberly-Clark moved to dismiss Kurtz's complaint for failure to state a claim. ECF 18. Following briefing and a hearing, the district court denied the motion to dismiss. ECF 49. At the same time, the court ordered the parties to engage in expedited, limited discovery concerning class certification. *Id.*

In February 2015, Kurtz moved for class certification; correspondingly, Kimberly-Clark moved to deny class certification. ECF 81; ECF 82. Each motion was accompanied by substantial evidence, deposition testimony, and expert reports. ECF 83; ECF 86. As the parties briefed these motions, the district court issued several scheduling orders seeking guidance from the parties in *Kurtz* and *Belfiore* on how to best administer the cases, culminating in an in-person conference with the court on March 31, 2015. ECF 98; ECF 108; ECF 114.

Following that conference, the district court scheduled a hearing in *Kurtz* and *Belfiore* where the parties would make presentations "on the technology underlying 'flushable wipes,'" which would inform the court about the nature of the challenged products and aid in resolving disputed class-certification issues. ECF 110. The court

anticipated this "Science Day" hearing would require limited merits discovery and pre-hearing disclosure of exhibits and witnesses. *Id.*

Before this scheduled hearing, the parties completed briefing on their respective class-certification motions. Additionally, Honigman filed a complaint against Kimberly-Clark raising claims similar to those asserted in *Kurtz*. A-131. As a result, the *Honigman* action was reassigned to Judge Weinstein for further proceedings.

On June 19 and June 21, 2015, the district court held "Science Day" hearings to gather evidence on the manufacture and performance of "flushable" wipes. Each side presented witnesses, subject to cross-examination, and submitted evidence on the ultimate issue of whether the wipes were, in fact, "flushable." *See* ECF 147-149; ECF 150.

After the "Science Day" presentations, the district court scheduled hearings on the pending motions for class certification. ECF 161. The *Belfiore* hearing occurred on August 12, 2015. Based on concerns raised during the hearing, the court ordered and received supplemental briefing in *Belfiore* regarding whether the action should be stayed to allow the Federal Trade Commission ("FTC") to provide guidance on the contested definition of "flushable." ECF 170; ECF 173.

On October 5, 2015, the district court entered a Memorandum & Order staying the proceedings in *Belfiore*. ECF 180. Spanning 92 pages, the court thoroughly discussed the various pending actions and related administrative proceedings, the parties' central dispute over the meaning of the term "flushable," and Rule 23's class-certification requirements. *Id.* Notably, the court found that *Belfiore* largely satisfied Rule 23's prerequisites. *Id.* But the court stopped short of granting class certification due to "superiority" concerns, believing that the FTC was better suited to adjudicate the definition of "flushable" and class-wide damage issues at the heart of the case. *Id.* Consequently, the court stayed its consideration of the pending class-certification motion and referred the matter to the FTC for further proceedings. *Id.*

On October 9, 2015, the district court heard argument on class certification in *Kurtz*, and solicited views on whether *Kurtz* should also be stayed pending referral to the FTC. *See* ECF 181. Days later, consistent with its ruling in *Belfiore*, the court stayed all proceedings in *Kurtz* and *Honigman*, and referred the cases to the FTC. ECF 183.

From the outset, the plaintiffs fought to lift the stay. Belfiore moved the district court to reconsider its ruling, which was denied. ECF 185; ECF 202. Kurtz moved the court to lift the stay based on a final consent order entered between the

FTC and Nice-Pak Products, Inc., a wipes manufacturer, which provided, in Kurtz's view, a workable definition of "flushable." ECF 205. The court denied that motion as premature because the FTC had not responded to the court's explicit referral. ECF 216. The court further suggested that the parties adjudicate the cases through recently issued administrative guidance providing for aggregate agency resolution. ECF 226. However, when it became apparent that the FTC would not (or could not) act, and that the parties would not consent to any global agency resolution of the actions, the court lifted the stay and invited briefing on how to administer the cases going forward. ECF 236.

In response, Kimberly-Clark renewed its motion to deny class certification and filed other dispositive motions aimed at dismissing Kurtz's claims for injunctive relief. ECF 267. Kurtz, for his part, sought resolution of his pending class-certification motion. ECF 272. During status conferences on February 2-3, 2017, the district court issued tentative rulings on the record granting class certification, but allowed Kimberly-Clark to file objections, which it did. ECF 287. In a subsequent order, the court indicated that it would not approve a nationwide class action, and instead would certify classes of New York consumers in both *Kurtz* and *Belfiore*. A-176-177. The court further stayed all proceedings in *Honigman*. A-178.

On March 27, 2017, the district court issued a comprehensive 131-page Memorandum & Order Certifying Class Actions. A-179-313. Building on its prior rulings in the *Belfiore* action, the court exhaustively analyzed the Rule 23 prerequisites, addressing disputes over the applicable law and facts, including competing expert reports on "price premium" liability and damages. A-252-310. Ultimately, the court found that plaintiffs satisfied all Rule 23 requirements, including superiority, and certified New York classes for injunctive and monetary relief. *Id.* Nonetheless, recognizing the significance of several contested issues, the court further recommended that an appeal under Rule 23(f) may be appropriate. A-313.

Accepting that invitation, Kimberly-Clark and other defendants petitioned this Court for relief under Rule 23(f), which it granted. ECF 297. After full briefing and oral argument, the Court issued a Summary Order remanding the cases for further proceedings. *Kurtz v. Costco Wholesale Corp.*, 768 F. App'x 39 (2d Cir. 2019). The Court expressed concern that, on the current record, it "cannot decide whether the Defendants' [Rule 23(b)(3)] predominance argument has merit, and therefore…conclude[d] that further development of the record is appropriate." *Id.* at 40. The Court directed the district court to allow the parties to supplement the record, and to make additional findings as to whether plaintiffs "can establish the

- 11 -

injury and causation elements of their claims at trial with common evidence." *Id.* at 40-41. The Court envisioned that the appeals would be reinstated once the district court issued a supplemental order. *Id.* at 41.

On remand, following the exchange of supplemental expert reports and depositions, the district court held a four-day evidentiary hearing where it received testimony from expert and facts witnesses addressing the predominance issues identified in the Court's Summary Order. ECF 348-351. Thereafter, the parties submitted post-hearing briefs addressing the impact of the additional evidence on Rule 23(b)(3)'s predominance requirement, including challenges to the admissibility of the expert testimony. ECF 360; ECF 362. The court also heard argument. ECF 366.

On October 25, 2019, the district court issued a Memorandum & Order on Remand. A-314-345. Noting that it held "substantial post-mandate evidentiary hearings with extensive evidence and briefs," the court "conclude[d] that its current certification orders are appropriate." A-317. To that end, the court summarized the expert evidence presented, and refused to exclude any expert's testimony as inadmissible or unreliable. A-320-337. The court further considered predominance issues, concluding that the plaintiffs "have met their burden and produced common proof of causation and injury" sufficient to warrant class certification. A-337-345.

- 12 -

Consequently, the parties notified the Court of the district court's remand decision. ECF 383. The Court reinstated the appeal and ordered supplemental briefing. *See id.*[2] On June 26, 2020, the Court entered a Summary Order affirming in part, reversing in part, and remanding the case for further proceedings. *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020).

More specifically, the Court determined that the district court did not abuse its discretion in certifying a damages class under Rule 23(b)(3). *Id.* at 61-63. The Court expressly found that Kurtz's evidence sufficiently demonstrated that class issues predominated over individual issues of causation and injury. *Id.* The Court, however, reversed the district court's ruling that certified a Rule 23(b)(2) class because Kurtz lacked standing to pursue injunctive relief in the absence of evidence that he would purchase Kimberly-Clark's flushable wipes in the future. *Id.* at 60-61.

On remand a second time, Kimberly-Clark informed the district court that it intended to move for summary judgment based on the existing discovery exchanged

---

[2]    While *Kurtz* was back on appeal, the *Belfiore* parties settled their action, sought approval of the settlement from the district court, and stipulated to the dismissal of their appeal. Around the same time, Judge Weinstein recused himself from the action, and the case was reassigned to Judge Pamela Chen. ECF 395. Judge Chen approved the settlement in *Belfiore*. In response, this Court dismissed the appeal as to *Belfiore*.

to date. ECF 400. Kurtz opposed, noting that such a motion was premature given the absence of any formal merits discovery. *Id.* At a pre-motion conference to discuss the anticipated motion, the court urged Kimberly-Clark to delay filing its dispositive motion and directed the parties to confer regarding a proposed discovery schedule. *See* A-49; ECF 416. In response, the parties submitted a proposed schedule, which the court approved. A-49.

### 2. After Years of Urging by the District Court, the Parties Agree to Settle the Actions

From the outset, the district court prodded the parties to settle these cases. In numerous court orders and other on-the-record statements, the court explored whether the parties would entertain a global resolution of the claims, even enlisting the magistrate judge to facilitate any negotiations. *See*, *e.g.*, ECF 216; ECF 226; ECF 252; ECF 255; ECF 262. At various times since 2018, the parties engaged in meaningful, good-faith settlement discussions, but failed to reach a mutually satisfactory resolution of the dispute.

Nonetheless, as the prospect of significant merits discovery and summary judgment motions loomed, the parties engaged in renewed settlement efforts, including mediation with the Honorable Wayne R. Andersen (Ret.), and ultimately reached agreement on the contours of a class-wide settlement. A-349.

- 14 -

On December 30, 2021, the parties jointly notified the district court that they had reached a settlement-in-principle, and requested that the court stay all proceedings to allow the parties to finalize the settlement documents. ECF 421. The court granted the stay. On April 5, 2022, Plaintiffs moved for preliminary approval of a nationwide, claims-made settlement. ECF 430.

To that end, the motion provided the district court with a copy of a fully executed settlement agreement. A-346-420. Under the terms of that agreement, a class member submitting a claim without a proof of purchase will receive seventy cents ($0.70) for each package of wipes purchased up to a maximum claim of seven dollars ($7.00), representing a limit of 10 packages per household. A-358-359. Alternatively, a class member submitting a claim with a proof of purchase will receive one dollar and ten cents ($1.10) for each package purchased up to a maximum claim of fifty dollars and sixty cents ($50.60), representing a limit of 46 packages per household. *Id.*

Plaintiffs explained that the parties arrived at these settlement values based, in part, an analysis performed by their expert, who opined that a Kimberly-Clark wipe labeled as "flushable" carried a 6.2% price premium over a non-flushable wipe. ECF 431. Class members could submit claims for purchases dating back to February

21, 2008.  A-356.  Kimberly-Clark agreed to a $20 million cash cap on settlement claims.  A-359.

Moreover, the motion informed the district court of Plaintiffs' plans to notify class members of the settlement's terms and claims-submitting procedures.  ECF 431.  Assisted by an experienced settlement administrator, Plaintiffs developed a notice plan designed to maximize the participation of class members in the settlement.  Using best-in-class tools and technology to reach as many settlement class members as possible, Plaintiffs' cutting-edge notice plan involved publication media notice utilizing online display, search terms, social media impressions, a settlement website, and a toll-free number.  ECF 432-2; A-380-399.

Finally, the motion described that Plaintiffs intended to seek an award of attorneys' fees and expenses of no more than $4,100,000, which would be paid separately by Kimberly-Clark, and would not impact the relief offered to the settlement class members.  ECF 431; A-366-367.  Additionally, Kurtz and Honigman would seek incentive awards of $10,000 and $5,000, respectively, for their efforts in prosecuting the actions for the benefit of the class.  ECF 431; A-367.

On May 19, 2022, after directing various changes to the settlement papers, the district court granted preliminary approval of the class action settlement.  A-421-428.  In so doing, the court also conditionally certified the nationwide class, directed

that notice be disseminated according to Plaintiffs' notice plan, and set deadlines for requests for exclusion, objections, and the submission of any final approval materials. *Id.* The court scheduled a final approval hearing for September 7, 2022. A-424.

### 3. The District Court Approves the Settlement

On August 3, 2022, Plaintiffs moved for final approval of the settlement. ECF 442. Most significantly, Plaintiffs explained that the settlement terms were fair, adequate, and reasonable under Second Circuit precedent. ECF 443. Addressing the sufficiency of the notice plan, Plaintiffs provided an update regarding the ongoing claims-administration process, informing the court that, as of August 3, 2022, they received 119,610 claims, 12 requests for exclusion, and no objections. *Id.* On the issue of attorneys' fees, Plaintiffs requested a reasonable fee of approximately $3.96 million, calculated using the lodestar method with a negative multiplier of 0.93. *Id.*

On August 16, 2022, Frank, a purported class member and frequent class-settlement objector, objected to the settlement—the sole objection filed in the action. ECF 446. Frank's objection focused primarily on the attorneys' fee request, asserting that the size of the proposed award was disproportionate to the overall recovery to be paid to the class. *Id.* This disparity, according to Frank, rendered the

settlement and attorneys' fee request unfair and unreasonable. *Id.* Plaintiffs opposed Frank's objection on various grounds, including that Frank's position was inconsistent with settled Second Circuit precedent. ECF 449.

On September 7, 2022, the district court held a final settlement approval hearing. A-55. Following the proceedings, the court requested supplemental briefing on several issues, including the propriety of a nationwide settlement class, the scope of the release, the sufficiency of the notice, and a comparative analysis of the settlement to other similar "flushable" wipe settlements. *Id.* Plaintiffs, Kimberly-Clark, and Frank submitted supplemental briefs, as directed. ECF 456; ECF 458; ECF 460. On November 7, 2022, the district court resumed the fairness hearing, heard additional argument regarding the supplemental submissions, and took the matter under advisement. A-56-57.

On June 12, 2023, the district court entered a Memorandum & Order approving the settlement, but deferring the issue of attorneys' fees to a subsequent hearing (the "Approval Order"). A-588-617.

First, the district court certified a nationwide settlement class under Rule 23. A-594-601. In so doing, the court overruled Frank's objections that Kurtz and Honigman were inadequate class representatives due to a potential conflict arising from the application of "different causes of action under varying state law regimes."

- 18 -

A-597-598. These conflicts, the court ruled, were merely "theoretical" and did not create a "fundamental" problem that precluded settlement class certification. *Id.* The court further concluded that there was no "true disparity among the claims or the interests of the claimants," and that "all class members will recover regardless of the theoretical strength of their unmitigated claims." A-599-600. Although undisputed by Frank, the court held that Plaintiffs satisfied Rule 23(b)(3)'s predominance and superiority requirements. A-600-601.

Second, the district court squarely rejected Frank's claim that "this settlement is unduly tainted by self-interest." A-603. The court noted that the "key factor" in evaluating the settlement "is whether the compensation available to the settlement class is fair and adequate, and not the extent to which the class takes advantage of the offer presented to them." A-604. Thus, because Frank conceded the class "will be fairly compensated" if they submit claims, the court recognized that this type of "claims-made" "settlement cannot be viewed as self-serving simply because the class did not fully utilize it or because other elements could have enhanced it." A-605-607.

Further, the district court found that the settlement was both procedurally and substantively fair. On the procedural side, the court applied a presumption of fairness drawn from the "robust prosecution of the underlying claims" and arm's

length "settlement negotiations." A-608-609. On the substantive side, the court evaluated the Second Circuit's *Grinnell* factors, and found "nearly every *Grinnell* factor favors approving the Agreement." A-609-615. In fact, the court noted that Frank's objection largely ignored the *Grinnell* factors, and instead relied on inapposite "out-of-circuit authority." A-603. To that end, the court determined that Frank's basic "argument ignores the unique risks that the class members in this case, especially those without proof of purchase, would face if their claims were to go to trial." A-607. The court also determined that Rule 23(e)(2) factors supported approval. A-610, 615-616.

The district court scheduled an additional hearing on September 19, 2023 to resolve Plaintiffs' request for attorneys' fees and expenses. A-617. Shortly before the hearing, Plaintiffs advised the court of the recent *Moses* decision issued by this Court, which clarified the law on class settlement approvals, including the impact of 2018 revisions to Rule 23(e). ECF 472. At the hearing, the court informed the parties that, in addition to considering attorneys' fees and expenses, it would also reevaluate the fairness of the settlement in light of *Moses*. A-620-623. Plaintiffs updated the court on the claims-administration process, indicating that they received at least 147,645 valid claims with a total value of $993,958.70. A-625-626.

- 20 -

On January 17, 2024, the district court entered an Amended Memorandum & Order (the "Amended Approval Order"). SPA-1-38. As expected, the court extensively analyzed the impact of *Moses* on the class-action settlement approval process. SPA-9-13. As a result, the court found that it could no longer apply a presumption of fairness to the vigorously negotiated settlement, but instead acknowledged that it must consider the factors set forth in Rule 23(e)(2) and *Grinnell* holistically. SPA-11-12. Similarly, the court recognized that it must evaluate settlement terms and attorneys' fees "in tandem," and not "separately" when conducting a fairness evaluation. *Id.* The court then "revisited" the substantive fairness analysis from its prior order "out of an abundance of caution." SPA-13. On second look, the court easily affirmed those factors supporting approval that were unaffected by *Moses*. SPA-14.

Addressing the terms of any proposed award of attorneys' fees under Rule 23(e)(2)(C)(iii), the district court found that the payment of fees "separate and apart" from the settlement benefits "will not affect the Class's recovery" and, thus, "adequately protects the Class's interests." SPA-14-15. For similar reasons, although attorneys' fees will be paid before the settlement benefits, the court determined that "this timing provision does not result in any unfairness to Class Members." SPA-15-16.

- 21 -

Turning to Rule 23(e)(2)(D), the district court concluded that the settlement agreement treats all class members equitably in terms of the settlement benefits and the scope of the release. SPA-16-17. While Plaintiffs sought incentive awards, the court ruled that "they are reasonable in light of the circumstances of this case," especially given the "length and intensity of this lawsuit" and Plaintiffs' significant "contributions to the litigation." SPA-17-18. The court further noted that such incentive awards "will be paid directly by Defendant, not at the expense of the Class." SPA-20.

Accordingly, applying Rule 23(e) and *Grinnell*—aided by this Court's recent *Moses* decision—the district court re-approved the settlement. *Id.*

Finally, the district court addressed Plaintiffs' request for attorneys' fees under Rule 23(h). SPA-20-38. The court thoroughly considered the proper methodology for calculating fees, with Plaintiffs seeking an award under the lodestar approach and Frank advocating for the percentage-of-fund method. SPA-21-22. Specifically, Frank maintained that, under the percentage-of-fund method, the percentage should be based on a constructive fund that accounts for the "actual payment to the class" and not the "total funds made available" by Kimberly-Clark, which would yield a fee of approximately $300,000. SPA-22-26.

But the district court rejected such a fee award as unreasonable because it "would not give due credit for Class Counsel's efforts or the results achieved in this case." SPA-25 (cleaned up). Indeed, the court decided that Frank's proposed fee failed to consider counsel's considerable work over "eight years of intensive litigation, which entailed substantial discovery, motion practice, and two appeals to the Second Circuit." *Id.* And the court also believed that "such a low award may disincentivize some plaintiffs' attorneys in pursuing cases like this one in the future." *Id.*

Thus, the district court observed that "lodestar is a more accurate measure of attorneys' fees, and should be applied here." SPA-26. The court then reviewed Plaintiffs' lodestar submission, and "[e]xercis[ing] its informed discretion," "impose[d] an across-the-board reduction of 20% to Class Counsel's fee application" to address certain concerns about the lodestar calculations, awarding "reasonable attorneys' fees" of $3,169,335.02. SPA-33. As a last step, the court confirmed that the fee was reasonable under the *Goldberger* factors established by this Court in evaluating fee requests. SPA-33-37.[3]

---

[3]  The district court awarded Plaintiffs their litigation expenses and approved the requested incentive awards. SPA-37-38.

Although no separate judgment was entered, Frank prematurely noticed an appeal in *Kurtz* and *Honigman* 30 days after entry of the Amended Approval Order. ECF 476. To avoid any jurisdictional issues, Plaintiffs and Kimberly-Clark asked the district court to enter a partial judgment under Federal Rule of Civil Procedure 54(b), which the court did on March 15, 2024. ECF 475; ECF 477; A-59; SPA-39-40. Thereafter, Frank amended his notice of appeal to include the partial judgment. ECF 480.

## III.    STANDARD OF REVIEW

This Court "review[s] a district court's approval of a settlement agreement, including attorneys' fees and incentive awards, for abuse of discretion." *Moses*, 79 F.4th at 241-42. "A district court abuses—or more precisely, exceeds—its discretion when its decision rests on an 'error of law' or a 'clearly erroneous factual finding,' or 'cannot be located within the range of permissible decisions.'" *Id.* at 242. This is an onerous burden for Frank to satisfy because "[t]his Court will disturb a judicially-approved settlement only when an objector has made a 'clear showing that the District Court has abused its discretion.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

## IV.    SUMMARY OF ARGUMENT

The district court properly exercised its discretion in holding that the settlement in this action was fair, reasonable, and adequate. In so doing, the district

- 24 -

court identified the governing standards in this Circuit for evaluating class-action settlements—the *Grinnell* factors and Rule 23(e)(2)—and correctly applied them to the claims-made settlement proffered by the parties. Following this Court's intervening *Moses* decision, the district court revisited its prior rulings, and concluded that nothing in *Moses* mandated a different result. Most importantly, the district court fully considered and rejected Frank's objections that a disproportionate allocation of attorneys' fees and settlement benefits rendered the settlement unfair, finding that the settlement was not tainted by collusion or self-dealing, and the settlement terms were procedurally and substantively fair. While Frank disagrees with that reasoned assessment, he fails to make a clear showing that the district court disregarded its fiduciary obligations or otherwise abused its broad discretion in approving the settlement.

Nonetheless, Frank seeks a bright-line rule from this Court that, in a claims-made settlement, an award of attorneys' fees cannot exceed the aggregate pay-out to the class. But Frank ignores that *Grinnell* and its progeny eschew any categorical rules in favor of a multi-factor standard, and fails to rebut the district court's holdings that the *Grinnell* factors, as recently clarified by *Moses*, support the fairness of the settlement. Frank cannot supplant this well-established standard with inapt out-of-circuit authorities or generalized criticisms of class-action settlement practices.

Frank relies almost exclusively on Rule 23(e)(2)(C)(ii) & (iii) to argue that purportedly outsized counsel fees shortchanged the class. These subsections, however, require an initial showing that the fee award adversely impacted the adequacy of relief offered to class members—*i.e.*, that they were actually shortchanged. Frank cannot make that showing here. Because he never challenged the adequacy of the cash benefits provided to the class members, Frank waived any argument under Rule 23(e) that the fee award, paid separately by Kimberly-Clark, somehow rendered the settlement unfair.

In any event, Frank's reading of both Rule 23(e)(2)(C)(ii) & (iii) is incorrect. Rule 23(e)(2)(C)(ii) directs inquiry into the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," and thereby addresses the allocation of settlement benefits among class members, not between the class and class counsel. And on that issue, Frank offers no legitimate arguments undermining the district court's sound factual findings regarding the sufficiency of the notice plan, the plan of allocation, or the processing of claims.

Rule 23(e)(2)(C)(iii), by contrast, permits courts to delve into the "terms of any proposed award of attorney's fees, including timing of payment" as part of a fairness analysis. That inquiry guards against counsel who sellout the class for a

quick pay-off, something that obviously did not occur during the eight years of active litigation, including numerous settlement discussions facilitated by an experienced mediator.

Moreover, Frank's repeated efforts to treat this settlement as one establishing a $20 million common fund, with inversely correlated fees and benefits, are misplaced. This is a claims-made settlement, providing each participating class member with "substantial benefits" up to an aggregate $20 million cap, and the fee award, paid separately by Kimberly-Clark, had no effect on the cash relief that could be claimed. While Frank complains about an alleged "fee reversion," this Court recognizes that the mere existence of such a settlement provision, without more, is not problematic.

Without a viable Rule 23(e) dispute—due to waiver and lack of merit—Frank can only attack the fee award as excessive under Rule 23(h). Frank, however, has abandoned his Rule 23(h) arguments on appeal. Even so, the record reflects that the district court appropriately exercised its discretion in awarding nearly $3.2 million in fees. Rejecting the percentage-of-the-fund method as unhelpful in this particular case, the district court applied the lodestar method requested by class counsel and regularly used in claims-made settlements. To that end, the district court recognized the excellent results achieved by counsel after over eight years of "intensive

litigation," and the disincentives that a low fee award may have on vindicating consumer rights through class-action practice. Finally, the district court properly found that the *Goldberger* factors further justified the fee award.

## V.    ARGUMENT

### A.    The Robust Record Reflects that the District Court Satisfied its Fiduciary Obligations to the Class by Scrutinizing the Fairness of the Settlement

Frank begins with the unremarkable proposition that courts must scrutinize class-action settlements to ensure that counsel negotiated a deal that is fair to absent class members. FOB 17-26. As part of their fiduciary role, courts must, in Frank's view, examine the allocation of settlement benefits, searching for "subtle signs" of collusion or "red flags" that counsel secured itself preferential treatment at the expense of the class. FOB 16, 19. Warning that "endlessly busy" courts "often defer to class counsel rather than exercise a zealous degree of oversight," Frank then implies that the district court here barely "raise[d] an eyebrow" when Plaintiffs proposed a settlement where the attorneys' fees exceeded the total value of approved claims. FOB 20-21.

Frank's pejorative criticism, however, conflicts with the robust record in this case, which demonstrates that the district court rigorously evaluated the proposed settlement, fully considered Frank's challenges, and ultimately determined that the settlement should be approved—not once, but twice. Indeed, in its Approval Order,

- 28 -

the district court expressly rejected Frank's objections that the settlement was tainted by class counsel's self-interest, and concluded that the settlement terms were procedurally and substantively fair to the class.  A-601-616.  The district court then reaffirmed those rulings in its Amended Approval Order, applying guidance provided by this Court's intervening *Moses* decision.  SPA-13-20.  In issuing these orders, the district court expressly recognized that it must apply "heightened attention" where the settlement and nationwide certification occur simultaneously, A-602, and it would not provide "rubber stamp approval" simply to remove the case from its docket, A-608.

In short, Frank's suggestion that the district court somehow abdicated its fiduciary obligations in approving the settlement—following three settlement hearings and two thoroughly reasoned orders—is completely unfounded.  *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[T]he district court's careful review of the settlement warrants the great deference we normally accord to trial court findings with respect to the fairness of class action settlements. The district court did not simply rubber-stamp the settlement on the basis of boilerplate findings, but wrote a long and careful opinion after engaging in a serious process to air and examine the objections to the settlement."); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 291 (6th Cir. 2016) ("Here, the R&R ***did*** peer into the relief to the

- 29 -

class and the attorney's fees at issue, and found both to be appropriate. …Blackman's concern is unwarranted here because the district court unreservedly found that the relief to the class was 'substantial' and that class counsel's fee request was appropriate, findings it made within its legitimate discretion.") (emphasis in original); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1120 (10th Cir. 2017) (finding the district court properly exercised discretion where it "provided thorough, well-reasoned responses to each objection").[4]

That Frank simply disagrees with the district court's reasoning does not come close to satisfying the onerous burden that it committed a clear abuse of discretion worthy of reversal. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019) ("But the litigation risks in this case were real on both the law and the

---

[4] Frank's out-of-circuit authorities are largely distinguishable, as they present situations where district courts failed to provide appropriate explanations when exercising discretion or otherwise ignored applicable Rule 23 standards. *See*, *e.g.*, *Briseño v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) ("Despite holding its final approval hearing after the new version of Rule 23(e)(2) took effect, the district court did not apply it…."); *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (remanding for further inquiry "because the record before us does not allow us to undertake even our deferential substantive review"); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013) ("The [final approval] order was conclusory, for the most part merely reciting the requirements of Rule 23 in stating that they were met. About Greenberg's objections, the order had nothing to say."); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) ("Because the district court did not provide such explanation, we must vacate the Approval Order and remand for further consideration.").

facts. Because of those uncertainties, it cannot be said 'that the district court's well-reasoned conclusion constituted an abuse of discretion, especially given the deference we accord to trial courts in these situations.'"); *D'Amato*, 236 F.3d at 86 ("We are satisfied that Judge Kram's review was methodical, reasonable, and thorough. We therefore decline to intervene in the District Court's approval of the settlement in this case."); *Motor Fuel*, 872 F.3d at 1121 ("[W]hile we may not agree with the decision the district court ultimately reached, we cannot say that decision is an abuse of discretion.").

**B.  Frank Disregards Second Circuit Precedent on Class-Action Settlement Approval and Mischaracterizes Rule 23(e)(2)(C) Standards**

Frank's central objection is that the settlement is unfair because the district court approved attorneys' fees of nearly $3.2 million when the final total of claims to be paid to class members reached nearly $1 million. *See* FOB 3, 13-14, 27.  From these numbers alone, Frank demands that this Court establish a bright-line settlement rule that, regardless of context and other case-specific factors, an award of attorneys' fees can never exceed the benefits actually paid to the class as a whole.  *See* FOB 27-30.  In so arguing, however, Frank ignores long-standing Second Circuit law governing class-action settlement approval.

- 31 -

More specifically, in *Grinnell*, this Court determined that, in conducting an "independent evaluation" into whether to approve a settlement offer, district courts should consider the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 462-63. In this case, the district court undertook this analysis in the Approval Order, and concluded that "nearly every *Grinnell* factor favors approving the Agreement." A-609-615. In light of this Court's intervening *Moses* decision, the district court "revisit[ed] its prior decision" in the Amended Approval Order, and again held that the "*Grinnell* factors weigh in favor of finding that the Settlement is substantively fair and warrants final approval[.]" SPA-13.

Much like his objection below,[5] Frank's appellate brief avoids any meaningful discussion of the *Grinnell* factors. Indeed, other than passing references to the case, Frank utterly ignores the district court's well-reasoned rulings that the *Grinnell*

---

[5] The district court noted that "[o]verall, Objector devote[d] little attention to the *Grinnell* factors[.]" A-603.

- 32 -

factors warrant approval of this settlement. For good reason. *Grinnell* and its progeny completely undermine Frank's position that bright-line settlement rules are necessary or appropriate. *See* A-609 (recognizing that "the court should consider the totality of these [*Grinnell*] factors in light of the particular circumstances" of the case.); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("All nine [*Grinnell*] factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances."); *see also Goldberger*, 209 F.3d at 53 ("[W]e adhere to our prior practice that a fee award should be assessed based on scrutiny of the unique circumstances of each case[.]"); *Gascho*, 822 F.3d at 287 (rejecting an "inflexible, categorical rule" regarding settlements and fee awards).[6] And nothing in *Grinnell* indicates that class-settlement approval hinges exclusively on some assessment of the allocation of funds between class claims and counsel fees.[7]

---

[6] Even Frank's main authority, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014), did not adopt a bright-line rule regarding fee awards, but rather established a "presumption" that could be rebutted in appropriate cases. *Pearson* itself involved only "eight months" of litigation from filing-to-settlement, *id.* at 779, a far cry from the eight years of intense litigation that produced the settlement in this case.

[7] Throughout his brief, Frank implies that Second Circuit law mandates his desired approach to settlement approval. *See* FOB 27. But Frank offers no serious discussion of any Second Circuit precedent, instead relying heavily on "out-of-circuit authority." A-603; FOB 32-34 (referencing "longstanding precedent of this Court," but focusing primarily on "Ninth Circuit" cases). In fact, the district court

Rather than grapple with *Grinnell*, Frank relies heavily on two subsections of Rule 23(e)(2)(C), which require courts, in conducting a fairness review, to consider whether the "relief provided to the class is adequate, taking into account:… (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(ii) & (iii). Frank maintains that these provisions "expressly require[] courts to consider defects of allocation between the class and class counsel" and, consequently, the district "court should not have approved a settlement that allocates to class counsel well above a reasonable percentage of the recovery." FOB 27.

Unfortunately, Frank's arguments run into some serious roadblocks. While important to the approval process, "the revised Rule 23(e)(2) does not displace [the Second Circuit's] traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Moses*, 79 F.4th at 243. As a result, Frank cannot disregard the district court's holistic analysis of the settlement by singling out certain provisions of Rule 23(e)(2)(C) he deems dispositive of the fairness issue. *See id.* (noting that "[c]ourts evaluating the fairness, reasonableness,

---

correctly recognized that "Objector cites no Second Circuit precedent that follows the 'red flags' approach." A-603.

and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically"); A-607 ("Objector's argument ignores the unique risks that the class members in this case, especially those without proof of purchase, would face if their claims were to go to trial.").[8]

To that end, the district court reviewed the plain language of Rule 23(e)(2)(C), and correctly found "nothing to suggest that the updated factors were designed to dramatically shift the emphasis of the *Grinnell* factors and mandate an evaluation of the class's actual recovery." A-604. As the district court further emphasized, "Rule 23 mentions the evaluation of a 'proposal,' not an outcome," which "indicates a forward-thinking evaluation." *Id.* Accordingly, under the revised rule, "the key factor is whether the compensation available to the settlement class is fair and adequate, and not the extent to which the class takes advantage of the offer presented to them." *Id.*

These district court findings expose a dispositive flaw in Frank's Rule 23(e)(2)(C) arguments. That is, Rule 23(e)(2)(C) focuses on "adequa[cy]" of the "relief provided for the class." Fed. R. Civ. P. 23(e)(2)(C). While Frank rightly

---

[8] In addition to ignoring *Grinnell*, Frank offers no rebuttal to the district court's finding that Rule 23(e)(2)(C)(i), which considers the adequacy of relief as it relates to "the costs, risks and delay of trial and appeal," supports the fairness of the settlement. SPA-14; A-612-613.

notes that Rule 23(e)(2)(C) guards against actions that "result in under-compensation of class members," he fails to demonstrate that such class members were "shortchanged" in this case.  See FOB 29-30, 31.

As the district court cogently recognized, Frank "does not dispute that class members (and households) without proof of purchase in this case will be fairly compensated." A-605.  Frank presented no evidence below (expert or otherwise) challenging the settlement benefits provided to class members—(1) $0.70 per package purchased up a total of $7.00 per household without proof of purchase, or (2) $1.10 per package purchased up to a total of $50.60 per household with proof of purchase—nor did he attempt to rebut Plaintiffs' expert, who opined that Kimberly-Clark charged a 6.2% price premium price attributable to the "flushable" component of the wipes.  *See* A-614.

In short, Frank waived any challenge to the adequacy of the relief provided to class members by not pressing one below.  *See Torcivia v. Suffolk Cnty., N.Y.*, 17 F.4th 342, 367 (2d Cir. 2021) ("The law in this Circuit is clear that where a party…advances arguments available but not pressed below, waiver will bar raising the issue on appeal."); *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1177 (10th Cir. 2016) ("We also note that Ziegler expressly waived any argument that the compensation to class members was inadequate.").   And without a predicate

"adequacy" challenge, Frank's arguments contesting the fairness of the settlement based on Rule 23(e)(2)(C)(ii) and (iii) are dead on arrival.

Nonetheless, pointing to the purportedly low claims rate, Frank contends that the nearly $1 million anticipated pay-out represents an "anemic recovery" for the class as a whole. FOB 24-25, 30. That aggregated figure is beside the point. "There are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims." *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013); *Jones v. Monsanto Co.*, 38 F.4th 693, 700 (8th Cir. 2022), ("If the court affirms the adequacy of the notice to the class, then the court cannot fault plaintiffs' counsel for the fact that class members, for myriad possible reasons, did not submit enough claims to exhaust the Common Fund."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *10 (N.D. Ohio Aug. 12, 2019) ("Counsel should not be penalized for a low claims rate in cases where claims are inherently less likely to be made.").

As the district court held, "any unclaimed funds will result from class members failing to accept the settlement offer, not from an inherently deficient offer." A-605; *see Grinnell*, 495 F.2d 448, 455 & n.2 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and

of itself, mean that the proposed settlement is grossly inadequate and should be disapproved…. In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").  Here, the district court correctly concluded, without dispute, that the settlement "provides the class a substantial benefit" that "surpasses the class's minimum reasonable recovery amount."  A-614, 615; *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1092 (10th Cir. 2021) ("Simply put, where class members were receiving compensation equivalent to or in excess of actual damages, it cannot be said that class counsel and defendants negotiated terms that favored attorneys' fees and costs at the expense of adequate and reasonable compensation for the class.").  The court committed no abuse of discretion in making this ruling.

Assuming, *arguendo*, that Frank overcomes this appeal-dispositive waiver, a deeper dive into the specifics of Rule 23(e)(2)(C)(ii) and (iii) further reveals critical problems with Frank's positions.

## 1.    Rule 23(e)(2)(C)(ii) does not address the allocation of funds between class and counsel

As noted, Rule 23(e)(2)(C)(ii) requires courts to consider adequacy of the class relief in relation to the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Fed.

R. Civ. P. 23(e)(2)(C)(ii). Frank harps on the term "effective" as a sign that the rule mandates some inquiry into the allocation of actual settlement relief between the class and counsel. FOB 15 ("A more effective method would have distributed more; a less effective method would have distributed less."); FOB 34-35 (discussing dictionary definition of "effective").

The appropriate focus of Rule 23(e)(2)(C)(ii), however, is on the "method" or process for distributing relief to class members, not how the relief is divided between the class and counsel. The Advisory Committee Notes confirm that reading:

> The relief that the settlement is expected to provide to class members is a central concern. Measuring the proposed relief may require evaluation of any proposed claims process....
>
> \*　　\*　　\*
>
> Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding.

Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. Consequently, courts applying Rule 23(e)(2)(C)(ii) evaluate the "plan of allocation" to class members, ensuring that any "allocation formula...ha[s] a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *See*, *e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019).

- 39 -

Given the real purpose of Rule 23(e)(2)(C)(ii), Frank's class/counsel "allocation" arguments are easily dispatched. Moreover, even when properly focused, Frank offers no significant challenge to the claims process established by the parties in this case, with the assistance of an experienced claims administrator that successfully administered at least two other similarly-structured (and unchallenged) "flushable" wipes settlements. *See* ECF 432-2 at ¶7 (listing settlement experience).

For example, Frank fails to contest any aspect of the settlement's robust notice plan, which was designed—using cutting-edge tools—to maximize its reach to those consumers located nationwide who purchased Kimberly-Clark flushable wipes during a protracted 14-year settlement class period.[9] Further, far from creating the "illusion" of exaggerated settlement benefits, FOB 22, the notice itself clearly informed class members precisely what they would receive if they submitted a claim—(1) $0.70 per package purchased up a total of $7.00 per household without proof of purchase, or (2) $1.10 per package purchased up to a total of $50.60 per

---

[9] While he does not contend that Plaintiffs' notice plan was deficient, Frank laments the absence of direct notice to class members. FOB 23, 36. He does so without any regard for the cost of providing direct notice to millions of purchasers of "flushable" wipes in this case. Nor does he acknowledge that, because Kimberly-Clark is a manufacturer and sells it wipes through third-party merchants, there is no feasible way to identify all consumers to provide such direct notice.

household with proof of purchase, subject to an overall "$20 million cap on cash payments." A-389; A-396. Providing "uniform relief to all class members" in this manner "constitutes effective distribution." *Villa v. Highbury Concrete Inc.*, 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022) (cleaned up); SPA-17 ("[T]he Settlement Agreement applies to all Class Members equally as 'they are each entitled to receive the same payment based on the number of [Defendant's product packages] they purchased and whether they have documented Proof of Purchase.").

Nor does Frank credibly dispute that the claims process here was reasonable. While Frank suggests that the parties intentionally sought to "discourage" the filing of claims by class members, he offers no evidence supporting that broad accusation, other than his own personal experience in successfully submitting a claim. FOB 35-36.[10] The district court, however, "reject[ed] [Frank's] argument that temporary website glitches show or even suggest, ill intent by Class Counsel," accepting unrefuted evidence that Frank's "issues were isolated instances." A-607; A-616.[11]

---

[10] Throughout his brief, Frank mentions the incentives of defendants to discourage claims, *id.*, but he neglects to discuss that Plaintiffs have every incentive to encourage a robust claims process where all class members file valid claims. In the end, while Plaintiffs can provide the class with an opportunity to obtain relief, they have no control over whether class members will attempt to do so.

[11] In fact, Plaintiffs submitted a declaration from Scott Fenwick, a Senior Director of Kroll Settlement Administration LLC, who directly refuted every single

In any event, the district court thoroughly reviewed the "plan of distribution" in this case, including the procedure for submitting "claims via U.S. mail or electronically," and the process by which the claims administrator would "be responsible for processing claims forms, validating claims, and preventing fraudulent claims." A-615-616. Based on the evidence presented, the district court "[did] not find that the distribution plan is inadequate or unduly burdens class members' reasonable recovery in this case." A-616; *see In re Tremont Sec. L., State L. & Ins. Litig.*, 699 F. App'x 8, 13 (2d Cir. 2017) ("The district court did not abuse its discretion in approving the POA. The POA is fair and reasonable, as was the mediation process that produced it.").

Accordingly, in the absence of evidence, Frank's generalized assertions that claims-made settlements "incentiv[ize]" actions that throttle the claims rate, FOB 22-23,[12] or his personal opinion that the claims process was "onerous," FB 36, fail

_____

complaint raised by Frank regarding the claims administration process. ECF 450-2 at ¶13.

[12] Despite Frank's apparent disdain for claims-made settlements, he ignores the district court's unmistakable holding that "claims-made settlements, with proof-of-purchase, are not inherently unfair and are regularly permitted." A-607; *see Casey v. Citibank, N.A.*, 2014 WL 4120599, at *2-3 (N.D.N.Y. Aug. 21, 2014) (finding that a "claims-made structure…does not impact the fairness, reasonableness, or adequacy of the proposed settlement," and the "Court does not have the authority to impose a preferred payment structure upon the settling parties.").

to demonstrate that the district court clearly abused its discretion in finding that the settlement satisfied Rule 23(e)(2)(C)(ii).

### 2. Rule 23(e)(2)(C)(iii)'s attorney-fee analysis does not render the settlement unfair

Next, Rule 23(e)(2)(C)(iii) requires courts to consider adequacy of the class relief in relation to the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Based on this subsection, Frank strenuously asserts that the "settlement was unfair as a matter of law because class counsel's fee award consumes three-quarters of the total benefits." FOB 27. According to Frank, the district court's award of nearly $3.2 million in attorneys' fees compared to $1 million aggregate payment to the class is *per se* unfair and unreasonable. FOB 27-30. His arguments are flawed in several respects.

First, Frank disregards the entire purpose of this attorneys' fee "review," which is to "provide[] a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check." *Moses*, 79 F.4th at 244. By any reasonable measure, class counsel did not "quickly settl[e]" this action to the detriment of the class, as reflected by the extensive procedural history measured by over eight years of active litigation against a large corporate defendant. *See id.*; *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 867 F.3d 791, 793 (7th Cir. 2017) (approving a fee award where the "extensive time and effort that class counsel had

devoted to a difficult case against a powerful corporation entitled them to a fee in excess of the benefits to the class");[13] *Baby Prods.*, 708 F.3d at 178 n.12 ("Young also asks us to hold that fee awards exceeding the amount directly distributed to class members are presumptively unreasonable. [W]e do not adopt such a rule."); A-606 ("[T]he Court disagrees that an impermissible self-interest is present just because Class Counsel may request for more than the class recovered.").

In addition to the years of "rigorous litigation," the district court further recounted that serious settlement negotiations in this case began in 2018 and spanned several years, marked by "several multi-day [in-person] settlement sessions," "several follow-up video conferences," and a "mediation session" overseen by a former federal judge. A-609. These extensive and hard-fought negotiations belie Frank's insinuation that the parties colluded to provide preferential treatment to class counsel, especially where the parties resisted the district court's repeated calls over the years to settle the case. *See D'Amato*, 236 F.3d at 85 ("This Court has noted that a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue

---

[13] Notably, the Seventh Circuit in *Sears* distinguished its prior cases in *Pearson* and *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), on which Frank heavily relies.

pressure."); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078-79 (2d Cir. 1995) ("[Appellants] sought to allege that counsel had a conflict of interest by contending that the amounts to be received by individual class members were small in comparison to the amount to be requested in legal fees. Such a disparity occurs without any conflict of interest in many class actions, and the supervision of settlement negotiations by a magistrate judge, as occurred here, makes it less likely that the disparity represents class counsel's promotion of their own interests over those of the class.").

Second, although Frank seemingly recognizes that the parties proposed a claims-made settlement, he repeatedly characterizes the settlement here as establishing a common-fund or even a "constructive common fund." FOB 10 ("$20 million fund"); FOB 21 ("undisguised…common fund"); FOB 28 ("structuring the settlement as a constructive common fund"). But, as the settlement documents make clear, there is no $20 million common fund against which claims are distributed. A-359 ("A $20 million cap on all claims made shall apply"). And the end-result $1 million aggregate pay-out is not the true measure of the "settlement benefits" for evaluating the fairness of the deal.[14]

---

[14]  Even if the Court considers the aggregate $1 million pay-out as the real value of the settlement here, the settlement/fee ratio compares favorably to other court-approved settlements in "flushable" wipes cases. *See* ECF 456 at 22-23 & n.21

Indeed, when considering the settlement benefits and the fee award "in tandem," as *Moses* directs, "courts must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." 79 F.4th at 244. In other words, the analysis considers the "relief that the settlement is ***expected to provide*** to class members," not what is ultimately disbursed to the class as a whole. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment.

In this claims-made settlement, the benefits to each class member represent (1) $0.70 per package purchased up a total of $7.00 per household without proof of purchase, or (2) $1.10 per package purchased up to a total of $50.60 per household with proof of purchase. A-358-359. These figures attempt to approximate the 6.2% "price premium" damages suffered by class members from Kimberly-Clark's alleged "flushable" misrepresentations, and the district court found that this "settlement offer surpasses the class's minimum reasonable recovery amount." A-615. The $20 million simply operates as a "cap" on Kimberly-Clark's total cash

---

(discussing (1) the settlement in *Belfiore* where the district court awarded fees of $3.2 million on an approximate $350,000 class pay-out; and (2) the settlement in *Pettit v. Procter & Gamble Co.*, No. 3:15-cv-2150-RS (N.D. Cal.), where the district court awarded fees of $2.15 million on a $538,879 class pay-out).

payment to the class, and the parties believed that the claims could have subsumed a sizeable portion (if not all) of the available funds.  A-359; A-628-629.

Frank's repeated attempts to characterize the settlement as a "fund" composed of inversely correlated percentages of attorneys' fees and aggregated class claims miss the mark.  *See* FOB 18 (wrongly asserting that "[r]egardless how a total settlement package is formally structured," "every additional dollar given to class counsel means one less dollar for the class.").  Rejecting Frank's common-fund narrative, the district court correctly observed that the "Parties here have agreed that Defendant will pay any attorneys' fees award 'separate and apart from' the settlement benefits made available to Class Members."  SPA-15.

Put simply, the fee award has no impact on the settlement benefits—class members receive uniform relief, regardless of attorneys' fees.  Thus, "[b]ecause the attorneys' fees will not affect the Class's recovery," the district court properly held that "this aspect of the Settlement adequately protects the Class's interests."  *Id.*; *see Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (approving a fee award where "the fee was negotiated only after settlement terms had been decided and did not, as the district court found, reduce what the class ultimately received"); *Pearlman v. Cablevision Sys. Corp.*, 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) ("In a case where the attorneys' fees are to be paid directly by defendant and,

- 47 -

thus, 'money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'").

Still, Frank rails against the "segregated fee," calling it a "gimmick" designed "to withhold money that the defendant was willing to pay from the class." FOB 20. That is a curious take, given how attorneys' fees are paid in class action settlements. That is, defendants pay a fee award to class counsel either indirectly (as a percentage of a common fund established for the class) or directly (through a segregated, non-fund payment). Class counsel here should not be faulted for choosing the option that maximizes the relief obtainable by the class. *Cf. Moses* 79 F.4th at 246 (questioning the fairness of the settlement in a common fund case where the "fee awards—especially the $1.25 million in attorneys' fees (about 76% of the $1.65 million Settlement Fund)—are intimately intertwined with the settlement," meaning that "there is effectively an inverse correlation between the amount of attorneys' fees…awarded and the cash available for *pro rata* distribution to class members that opt for cash."); SPA-15 (distinguishing *Moses* based on the absence of such "inverse correlation" in this case).

Third, Frank complains that the existence of certain "clear sailing" and "fee reversion" provisions in the settlement constitutes "red flags" of possible "self-

dealing." FOB 39-41. The district court, however, flatly rejected Frank's "red flag" approach as inconsistent with *Grinnell*, and expressly found that "there is no 'clear sailing' provision" in the settlement agreement. A-603, 606. Moreover, this Court has held that the mere existence of such provisions, "without more," do not "suggest improper collusion between class counsel" and the defendant. *See Blessing*, 507 F. App'x at 4 ("To the extent objectors argue that the clear-sailing and reversionary provisions suggest improper collusion between class counsel and Sirius XM, we note that such provisions, without more, do not provide grounds for vacating the fee."); *see also Samsung*, 997 F.3d at 1092 ("Thus, while the inclusion of a 'kicker' and a 'clear-sailing' agreement in the fees and costs structure might serve as an indication of improper self-dealing, the structure of the negotiations and the actual compensatory terms of this Settlement Agreement counteract the proposition that the Agreement was the product of self-dealing by class counsel through negotiations with Samsung."); *Gascho*, 822 F.3d at 291 ("Though some courts have 'disfavored' clear sailing agreements and kicker clauses, their inclusion absent more—as is the case here—does not show that the court abused its discretion in approving the settlement.").

Here, the parties agreed that class members would receive a specified monetary benefit—deemed a "substantial benefit" by the district court, A-614—

which Frank failed to challenge as inadequate.  The award of attorneys' fees (or

reduction thereof) has no bearing on the sufficiency of that benefit.  As the district

court explained:

> Ultimately, [Frank] wishes for a more lucrative settlement for the class;
> but the Court is tasked with assessing the fairness of the existing one.
> Fair does not mean superior, or even ideal.  Because the Court deemed
> the settlement fair in all aspects…the settlement cannot be viewed as
> self-serving simply because the class did not fully utilize it or because
> other elements could have enhanced it.

A-607.  Frank identifies no clear abuse of discretion in that ruling.  *See Charron*,

731 F.3d at 249 ("Appellants' claims that the district court's balancing of the

*Grinnell* factors was inadequate boil down to the usual contention that the settlement

did not get enough for the class. We find no fault in the district court's rejection of

that contention.").

### C. Even Though Frank Abandoned His Challenge to the Fees Awarded Under Rule 23(h), the District Court Properly Exercised Its Discretion in Awarding Fees

Stripped of its unwarranted rhetoric and misdirected settlement-fairness

arguments, Frank's appeal presents nothing more than a naked claim that the

attorneys' fees awarded to class counsel are excessive.  "Ultimately, any award of

attorney's fees must be evaluated under Rule 23(h)," not Rule 23(e), "and no rigid

limits exist for such awards."  Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note

to 2018 Amendment.  And, on that point, Frank appropriately states that "the relief

actually delivered to the class can be a significant factor in determining the appropriate fee award." *See id.*; *Moses*, 79 F.4th at 244 (same); FOB 31.

The problem with this approach, quite frankly, is that Frank has abandoned any direct attack on the fee award on appeal. To be sure, Frank argued below that the proposed fee award was excessive, which the district court largely rejected. SPA-37. On appeal, Frank's case-opening Form C indicated his intent to challenge the district court's award of purportedly "windfall fees" under Rule 23(h). 2d Cir. ECF 12. For whatever reason, Frank discarded that issue on appeal, omitting any substantive Rule 23(h) arguments from his appellate brief.

Such deliberate decision-making constitutes abandonment, and precludes independent review of the fee award by this Court. *See*, *e.g.*, *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 428 (2d Cir. 2023) ("To be clear, we do not invoke abandonment as a technicality to justify sidestepping otherwise-meritorious arguments…. On the contrary, we deem that issue to be abandoned ***precisely because*** the Investors have failed to make any meaningful—let alone meritorious— argument as to how the district court erred in analyzing it.") (emphasis in original).

In any event, the district court properly exercised its discretion in awarding fees in this case. In that regard, the district court indulged Frank's percentage-of-fund arguments—even though Plaintiffs only requested fees under the lodestar

- 51 -

approach—conducting a detailed review regarding whether the "fund" should encompass the total amount "made available" to the class ($20 million cap) or the actual expected pay-out for claims-made (nearly $1 million). SPA-22-26. While it agreed with Frank that the actual results are what matters,[15] the district court found that Frank's proposed percentage award "would not be reasonable here" for two reasons, SPA-25, neither of which Frank addresses on appeal.

First, the district court determined that "such an award would not give due credit for Class Counsel's efforts or the results achieved in this case." *Id.* Given the (undisputed) adequacy of the relief offered to the class, the district court believed that counsel should be reasonably compensated for a "Settlement [that] was achieved after eight years of intensive litigation, which entailed substantial discovery, motion practice, and two appeals to the Second Circuit." *Id.*; *see Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate

---

[15] Although not at issue in this appeal, Plaintiffs disagree with the district court's interpretation of *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007). SPA-23-24. There, the Court held that, in computing a fee award based on a common fund, "[a]n allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Id.* at 437. In so doing, the Court drew no distinctions between a true common fund or a claims-made "fund" where unclaimed money reverts to the defendants. *See id.* at 437-38 ("Arguably, the entire Settlement Fund is a 'benefit achieved for class members.'").

- 52 -

to the financial interest at stake in the litigation. If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error."); *Sears*, 867 F.3d at 793 (noting that the "extensive time and effort that class counsel had devoted to a difficult case against a powerful corporation entitled them to a fee in excess of the benefits to the class").

Nowhere does Frank even acknowledge the tremendous time and effort that class counsel spent litigating this action to a favorable settlement. *See Motor Fuel*, 872 F.3d at 1120 (approving fee award, noting that "a mere glance at the district court's docket—which contains almost 5,000 entries spanning more than nine years—confirms" that counsel performed substantial work); *cf. Dry Max Pampers*, 724 F.3d at 718 (rejecting a large fee award "in a case where counsel did not take a single deposition, serve a single request for written discovery, or even file a response to P&G's motion to dismiss").

Second, the district court "observe[d] that such a low award may disincentivize some plaintiffs' attorneys in pursuing cases like this one in the future." SPA-25. Indeed, "[c]onsumer class actions…have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries

- 53 -

are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287. "If we are to encourage these positive societal effects, class counsel must be adequately compensated—even when significant compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small)." *Id.*; *Baby Prods.* 708 F.3d at 178 ("Class counsel should not be penalized for…legitimate reasons unrelated to the quality of representation they provided. Nor do we want to discourage counsel from filing class actions in cases where few claims are likely to be made but the deterrent effect of the class action is equally valuable.").

Here, Plaintiffs established that public policy considerations support the fee award. For example, Plaintiffs presented a declaration from Robert Villée, a long-time wastewater industry executive, who credited the "efforts of counsel in bringing and litigating the *Kurtz* and *Honigman* actions [for having] a major and direct effect on, and I believe was the genesis of, Kimberly-Clark's development of wipes that meet the wastewater industry's flushability definition." A-498; *see also* A-647-650 (discussing how counsel's efforts in these actions served as "a springboard to achieve th[e] settlement in [a] Charleston[, South Carolina flushable wastewater

- 54 -

action] that has a real public benefit").[16]  Frank offered no rebuttal to such testimony, nor could he.

In sum, having rejected Frank's percentage-of-fund approach as an "[un]useful metric," the district court applied the lodestar approach sought by Plaintiffs as a "more accurate measure" of fees in this case.  SPA-25-26; *see Allen v. Taylor*, 795 F. App'x 79, 80 (2d Cir. 2020) ("[W]e have held that it is within a district court's discretion to use the lodestar method alone, as the district court did in this case.").  The district court then thoroughly analyzed Plaintiffs' fee submission, and reduced Plaintiffs' fee request by 20% to account for certain billing "considerations," before arriving at a final award of nearly $3.2 million.  SPA-26-33; *see Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 4 (2d Cir. 2013) (rejecting arguments that fee was excessive even after the district court's reduced the fee request by 25% based on the "recognized practice of 'percentage cuts as a practical means of trimming fat from a fee application'").

---

[16]  That action refers to *Commissioners of Public Works of the City of Charleston v. Costco Wholesale Corp.*, Case No. 2:21-cv-00042-RMG (D.S.C.), where class counsel prosecuted and secured nationwide injunctive relief in a class action brought on behalf of municipal wastewater entities against several "flushable" wipes manufacturers, including Kimberly-Clark.  At the last final approval hearing, the district court approved several settlements and expressly "commend[ed] the plaintiff[] on taking the path that had…the greatest societal impact."  *Id.*, Settlement Hr'g Tr. 11:3-4, ECF 224.

Frank fails to address any of the district court's lodestar analysis. At most, Frank implies that using the lodestar approach gave counsel a "perverse" incentive "to multiply proceedings and drag out litigation" simply to boost fees. FOB 38. The protracted procedural history of this case—which Frank conveniently ignores—belies any notion that class counsel engaged in such bad-faith litigation efforts.

Finally, the district court confirmed the reasonableness of the fee award by applying the factors established by this Court in *Goldberger*. SPA-33-37. Unsurprisingly, Frank neglects to address this leading Second Circuit authority, and therefore offers no rebuttal to the district court's reasoned conclusion that the "lodestar method and the *Goldberger* factors both support awarding Class Counsel attorneys' fees of" nearly $3.2 million in this case. SPA-37.

### D. The Court Should Disregard *Amici Curiae*

Frank has enlisted several state attorneys general to file an *amici curiae* brief on his behalf. 2d Cir. ECF 52.1. Interestingly, this is not the first time that this collection of attorneys general has supported efforts by Frank (or members of his organization) to derail class-action settlements. *See*, *e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022); *Jones*, 38 F.4th at 695; *In re Google Inc. St. View Elec.*

- 56 -

*Commc'ns Litig.*, 21 F.4th 1102, 1107 (9th Cir. 2021); *Briseño*, 998 F.3d at 1018; *Samsung*, 997 F.3d at 1080.

In this case, *amici*'s efforts must be taken with a huge grain of salt. Each attorney general appearing as *amicus* here received notice of the proposed settlement pursuant to the Class Action Fairness Act, ECF 450-2, yet none saw fit to appear before the district court to object to this purportedly unfair settlement agreement, as they did in other cases mentioned in their brief. AB 7. This waiver seemingly undermines their purportedly sincere "efforts to protect consumers from class action settlement abuse." AB 6. If this settlement was so unfair, as *amici* posit, they should have challenged it in the district court in the first instance, rather than appear at the 11th hour on appeal with a friend-of-the-court brief. *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.").

Moreover, *amici* offer nothing new to the overall discourse. They largely parrot the same faulty arguments peddled by Frank, ignoring binding precedent from this Court, the lengthy procedural history of this case, and specific terms of the

settlement agreement.  Most critically, much like Frank, *amici* fails to challenge the adequacy of the settlement benefits offered to class members, which defeats their second-hand arguments about the supposedly disproportionate fee award.

Lastly, *amici* attempts to raise several concerns that were ignored by Frank either before the district court or on appeal, including issues relating to the payment and calculation of counsel's lodestar.  AB 15, 16-21.  Such arguments are improperly raised and should be disregarded.  *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001) ("Although an *amicus* brief can be helpful in elaborating issues properly presented by the parties, it is normally not a method for injecting new issues into an appeal, at least in cases where the parties are competently represented by counsel.").

## VI.    CONCLUSION

For all of the foregoing reasons, this Court should affirm the district court's order approving the settlement and awarding attorneys' fees.

DATED:  September 6, 2024     ROBBINS GELLER RUDMAN
       & DOWD LLP
     DOUGLAS WILENS

     *s/Douglas Wilens*
     DOUGLAS WILENS

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
dwilens@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA
FRANCIS P. KARAM
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com
fkaram@rgrdlaw.com
wmassa@rgrdlaw.com

Attorneys for Plaintiffs-Appellees

- 59 -

**CERTIFICATE OF COMPLIANCE**

The foregoing brief complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 5(c) and 32(c).  The brief contains 12,975 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32.

The foregoing brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32, because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

*s/Douglas Wilens*

DOUGLAS WILENS

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court for the Second Circuit Court of Appeals by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/Douglas Wilens*
DOUGLAS WILENS
